## Vivian G. Carter

### v.

## James Newman Carter

Record No. 830841

October 10, 1986

Present: All the Justices

*Thomas A. Guidoboni (Edward C. O'Connell; Bonner, O'Connell & Scheininger*, on brief), for appellant.

*Jacquelyn K. Boyden (Gerald R. Walsh; McCandlish, Lillard, Rust & Church*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

At issue in this appeal is the proper construction to be given Code § 8.01-252,[1] which establishes a 10-year statute of limitations for actions in Virginia based on foreign judgments. Also at issue is the constitutional validity of this provision when viewed in conjunction with Code § 8.01-251,[2] which provides a 20-year period for enforcement of judgments. Appellant contends the 10-year limitations period of § 8.01-252 discriminates against foreign judgment creditors in violation of the Full Faith and Credit Clause, Article IV, § 1 of the United States Constitution, and the Equal Protection Clause, § 1 of the Fourteenth Amendment to the Constitution.

Vivian G. Carter (Vivian) and James Newman Carter (Newman) were divorced March 11, 1964, by final decree of the Circuit Court of Palm Beach County, Florida. In the final decree, the court ordered Newman to pay child support and awarded Vivian a judgment against him in the amount of $36,100, plus costs of $27 and counsel fees of $1,500. Although some child support payments were made, no payments were made on Vivian's judgment.

When this judgment was entered, Florida law provided that a judgment became dormant three years after its rendition, and no execution could be issued thereafter unless and until the judgment was revived by writ of *scire facias*. Fla. Stat. § 55.15 (1965) (repealed 1967 Fla. Laws c. 67-254, § 49, eff. June 26, 1967); *Spurway* v. *Dyer*, 48 F. Supp. 255, 258 (S.D. Fla. 1942). In 1967,

---

[1] Code § 8.01-252 provides:

*Actions on judgments of another state.* — Every action upon a judgment rendered in another state or country shall be barred, if such action would there be barred by the laws of such state or country, and in no event shall an action be brought upon any such judgment rendered more than ten years before the commencement of the action.

[2] Code § 8.01-251, effective until January 1, 1985, provided, in part:

*Limitations on enforcement of judgments.* — A. No execution shall be issued and no action brought on a judgment including a judgment in favor of the Commonwealth, after twenty years from the date of such judgment, unless the period be extended as hereinafter provided.

Subsection (A) of the current statute, effective January 1, 1985, contains no material change.

the Florida statutes were revised to provide that judgments would not become dormant but would continue to furnish the basis for the issuance of execution until barred by the 20-year statute of limitations affecting domestic judgments. Fla. Stat. Ann. § 56.021 (West 1969); 1967 Fla. Laws c. 67-254, § 11, eff. June 26, 1967; Fla. Stat. Ann. § 95.11(2)(a). The writ of *scire facias* thus became obsolete. *See Collection Pursuant To Florida's Supplementary Proceedings in Aid of Execution,* 25 U. Miami L. Rev. 596, 600-601 (1970-71). Because the new legislation made no provision for judgments which had become dormant under the former law but which were not yet barred by the statute of limitations, the Supreme Court of Florida adopted Rule of Civil Procedure 1.100(d) providing for revival of a judgment by motion, after notice, in lieu of *scire facias.*

Vivian's judgment became dormant under the former law in March 1967. In 1977, she filed a motion to revive judgment in lieu of *scire facias* in the Circuit Court of Palm Beach County. Both parties appeared by counsel. The court entered an order on August 26, 1977, reviving the 1964 judgment and ordering that execution issue thereon. Newman appealed the revival to the Florida Fourth District Court of Appeal, which affirmed the circuit court by order entered December 27, 1978.

Vivian instituted this action in the trial court on July 23, 1981, seeking a Virginia judgment based on the Florida judgment. Newman pleaded the statute of limitations. Vivian relied upon documentary evidence in the record and a stipulation that interest on the Florida judgment accrued at an annual rate of 6%. The trial court sustained Newman's motion to strike the evidence, ruling that Vivian's right of action on the judgment was barred by the 10-year period of limitations of Code § 8.01-252.

Vivian first argues that this statute should be construed to mean that a judgment "rendered" includes a judgment "revived" so that her action on the 1964 judgment that she revived in 1977 will not be barred. We disagree.

The Constitution requires that we give full faith and credit to the judgments of other states. And where the judgment of another state has been revived, we must look to the law of that state in determining whether the revival gave rise to a new judgment or merely continued the life of the old judgment. *Union Nat. Bank* v. *Lamb,* 337 U.S. 38, 43-44 (1949); *Johnson Bros. Wholesale Liquor Co.* v. *Clemmons,* 233 Kan. 405, 409, 661 P.2d 1242,

1245, *cert. denied,* 464 U.S. 936 (1983). Under Florida law, a proceeding by *scire facias* was not an original action on the judgment but was merely a continuation of the former judgment. *B. A. Lott, Inc.* v. *Padgett,* 153 Fla. 304, 307, 14 So. 2d 667, 669 (1943); *McCallum* v. *Gornto,* 127 Fla. 792, 794, 174 So. 24, 25 (1937); *Massey* v. *Pineapple Orange Co.,* 87 Fla. 374, 377, 100 So. 170, 171 (1924). Similarly, revival of a judgment by proceeding on motion in lieu of *scire facias* under Rule 1.100(d) is also merely a continuation of the original judgment. We find that, under Florida law, the date the judgment was rendered was the date of the original judgment, 1964, not the date of revival, 1977. Thus, the 10-year period of § 8.01-252 began to run upon entry of the decree in 1964 and, if constitutionally valid, bars this action. Accordingly, we turn to Vivian's alternative argument that Code § 8.01-252 is unconstitutional as violative of the Full Faith and Credit and Equal Protection Clauses of the United States Constitution.

■ It has long been settled that a forum state may apply its own statute of limitations to an action on a foreign judgment without violating the Full Faith and Credit Clause. This statute is procedural only; it does not affect the judgment creditor's substantive right unless the period of limitations is so stringent and unreasonable as to deny the right. *Christmas* v. *Russell,* 72 U.S. (5 Wall.) 290, 300 (1866); *Bacon* v. *Howard,* 61 U.S. (20 How.) 22, 25 (1858); *M'Elmoyle* v. *Cohen,* 38 U.S. (13 Pet.) 312, 328 (1839); *Johnson Bros.,* 233 Kan. at 408, 661 P.2d at 1245; *cf. Jones's adm'r.* v. *Hook's adm'r.,* 23 Va. (2 Rand.) 303, 310-12 (1824). A 10-year period is neither stringent nor unreasonable and therefore does not offend this portion of the Constitution.

The crucial issue is whether Code § 8.01-252 violates the Equal Protection Clause of the Fourteenth Amendment. Vivian says that §§ 8.01-251 and -252 discriminate against foreign judgment creditors by subjecting them to a shorter limitations period than that imposed on domestic judgment creditors.

■ The Equal Protection Clause forbids any state to deny a person within its jurisdiction the equal protection of the laws. This proscription guarantees that classes or persons will be given the same protection as like classes or persons. It does not require similar treatment of persons not similarly situated. *Rostker* v. *Goldberg,* 453 U.S. 57, 79 (1981); *Truax* v. *Corrigan,* 257 U.S. 312, 333-37 (1921); *Kochins* v. *Linden-Alimak, Inc.,* 799 F.2d

1128 (6th Cir. 1986). It does not require situations that are different in fact to be treated in law as though they are the same. *Tigner* v. *Texas*, 310 U.S. 141, 147 (1940).

██ Code § 8.01-251 imposes a 20-year limitations period on the *enforcement* of judgments. Code § 8.01-252, however, imposes a period limiting to 10 years the time in which a party may bring an action in Virginia on a foreign judgment. Once the foreign judgment is reduced to a Virginia judgment under this provision, enforcement of the judgment, like any originating in Virginia, is subject to the 20-year limitations period of § 8.01-251. Thus, a foreign judgment creditor may actually have as many as 30 years to enforce his judgment.

██ Vivian argues that these statutes classify domestic judgment creditors and foreign judgment creditors for impermissibly different treatment. These classes of creditors, however, are inherently different. The domestic judgment creditor has an immediate right to enforcement of his judgment, without further action. The foreign judgment creditor has no right of enforcement in Virginia until he reduces his foreign judgment to a Virginia judgment. As these creditors are not similarly situated, statutory provisions treating them differently may not be successfully challenged under the Equal Protection Clause.

██ Assuming, however, that classification of foreign judgment creditors for discriminatory treatment is subject to an equal protection challenge, the discriminatory statute is nevertheless invalid only if the classification bears no rational relationship to a legitimate state purpose.[3] A discriminatory classification satisfies the rational relationship test if a legitimate purpose supports the classification and if the legislature could reasonably believe the classification would accomplish the purpose. *Western & Southern Life Ins. Co.* v. *State Bd. of Equalization*, 451 U.S. 648, 668 (1981); *Schweiker* v. *Wilson*, 450 U.S. 221, 230 (1981); *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 461-63 (1981); *Vance* v. *Bradley*, 440 U.S. 93, 97-98 (1979). "[T]he drawing of lines that create distinctions is peculiarly a legislative task and an

---

[3] This legislation is not subject to strict scrutiny as it does not involve a suspect class or a fundamental right. *See Massachusetts Board of Retirement* v. *Murgia*, 427 U.S. 307, 312-13 (1976); *San Antonio Indep. School Dist.* v. *Rodriguez*, 411 U.S. 1, 28 (1973). Nor does it receive the intermediate level of scrutiny applied to legislative classifications that give rise to "recurring constitutional difficulties." *See Plyler* v. *Doe*, 457 U.S. 202, 217-18 (1982); *Craig* v. *Boren*, 429 U.S. 190, 197 (1976).

unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Board of Retirement* v. *Murgia*, 427 U.S. 307, 314 (1976) (citation omitted). The burden rests on the party challenging the statute's validity to show the legislature acted irrationally, and the Court may not substitute its own judgment for a legislative determination that has some rational basis. *Schweiker*, 450 U.S. at 234-35; *Clover Leaf*, 449 U.S. at 464; *Vance*, 440 U.S. at 97.

■■■ The original legislative purpose underlying the 10-year statute of limitations was to provide defendants in actions on foreign judgments an opportunity to challenge the personal or subject matter jurisdiction of the foreign court. Imposition of a 10-year limitations period for actions on foreign judgments serves this purpose just as statutes of limitations in other kinds of actions protect defendants against the problems of proof following lapse of a lengthy period of time. Protection of defendants against stale claims is recognized and accepted as a legitimate legislative concern. A 10-year period is fair and reasonable and is more generous than many of the periods in force in Virginia under other statutes of limitations. *See, e.g.*, Code § 8.01-243 (two-year period for actions for personal injuries, five-year period for actions for injury to property); § 8.01-246 (five-year period for actions on written contracts, three-year period for actions on oral contracts). Adopting a statute of limitations necessarily involves establishing an arbitrary period during which actions may be brought, *Kochins*, 799 F.2d at 1138, and the General Assembly's imposition of a 10-year period for bringing actions on foreign judgments was not an irrational decision.

Vivian places undue reliance on the decision of the United States Supreme Court in *Watkins* v. *Conway*, 385 U.S. 188 (1966). In *Watkins*, a Florida judgment creditor brought suit on his judgment in Georgia five years and one day after his judgment had been rendered. Georgia statutes barred an action on a foreign judgment unless brought within five years after the judgment was "obtained," while a longer period applied to enforcement of domestic judgments. The Georgia Supreme Court held the suit barred by the five-year limitations period, and the creditor chal-

lenged this ruling under the Equal Protection Clause.[4] 385 U.S. at 188-89.

As the Supreme Court noted, the creditor's claim was "simply that Georgia has drawn an impermissible distinction between foreign and domestic judgments" and that "the statute is understandable solely as a reflection of Georgia's desire to handicap out-of-state judgment creditors." The four-paragraph *per curiam* opinion indicated that, if the foreign judgment creditor's analysis of the *purpose* and *effect* of the Georgia statute were correct, the Court might agree that the statute violated the Constitution. *Id.* at 189. The Court, however, found the statute had no discriminatory *effect* in its application by the Georgia courts, which have construed Georgia's statute of limitations as running not from the date of the original judgment but from the date of its latest revival. Absent any discriminatory *effect*, the Court upheld the constitutional validity of the statute without addressing the validity of the creditor's assertion that the statute's sole *purpose* was "to handicap out-of-state judgment creditors." *Id.*

■ Code § 8.01-252 was not enacted to handicap out-of-state creditors but for the legitimate purpose of protecting defendants from stale claims and assuring that the passage of time will not deprive them of a reasonable opportunity to challenge the jurisdiction of the foreign court. Thus, there is no basis for a conclusion that *Watkins* dictates the result urged by Vivian.

■ We are not unmindful of the criticism that has been levied against statutory schemes which impose a shorter period for maintaining actions on foreign judgments than the period allowed for enforcement of judgments generally. *See, e.g.,* D. Rendleman, Enforcement of Judgments and Liens in Virginia § 8.6 (1982). The bare assertion that our statute "treats a Virginia judgment better than a foreign judgment" is not, however, a sufficient basis for holding the statute unconstitutional. Concluding that, if the Equal Protection Clause is even applicable to the dissimilar classes of creditors addressed by Code §§ 8.01-251, -252, the disparate

---

[4] The creditor in *Watkins* also challenged the constitutionality of the Georgia law under the Full Faith and Credit Clause, but the Supreme Court addressed only the equal protection argument. 385 U.S. at 189. *M'Elmoyle* v. *Cohen*, 38 U.S. (13 Pet.) 312 (1839), had earlier upheld the same Georgia law, finding that the forum's application of its own shorter limitations period did not deny full faith and credit to the foreign judgment. As the *Watkins* Court noted, however, *M'Elmoyle* did not reach the equal protection issue, as that case predated the adoption of the Fourteenth Amendment. 385 U.S. at 189-90 n.1.

treatment of foreign judgment creditors is rationally related to a legitimate state purpose, we hold that the 10-year limitations period of Code § 8.01-252 does not violate the Fourteenth Amendment. Determination that the period should be 10 years was a policy decision properly made by the General Assembly. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

RUSSELL, J., dissenting.

In my view, this case is controlled by *Watkins* v. *Conway*, 385 U.S. 188 (1966). The majority opinion labors diligently to distinguish that case, but it labors in vain.

*Watkins* was concerned with the enforcement of a Florida judgment in the Georgia courts. Although the Florida judgment was enforceable in Florida for 20 years, Georgia statutes provided that the enforcement of foreign judgments was barred after five years, domestic judgments after ten years. When the Florida creditor brought suit in a Georgia court five years and one day after the judgment had been rendered, his cause of action was held barred by Georgia law.

The Supreme Court, in a *per curiam* opinion (Justice Douglas dissenting without opinion), noted that the creditor's claim was "simply that Georgia has drawn an impermissible distinction between foreign and domestic judgments. [The creditor] argues that the statute is understandable solely as a reflection of Georgia's desire to handicap out-of-state creditors." *Id.* at 189. The Court gave no credence whatever to the distinction the majority opinion seeks to draw here: that foreign creditors and domestic creditors "are inherently different" and "are not similarly situated." Rather, the Supreme Court, in *Watkins*, stated flatly: "If [the creditor's] analysis of the purpose and effect of the statute were correct, we might well agree that it violates the Federal Constitution. For the decisions of this Court which [the debtor] relies upon *do not justify the discriminatory application of a statute of limitations to foreign actions*." *Id.* (footnote omitted) (emphasis added).

The Court concluded, in *Watkins*, that the Georgia statute, as interpreted by the courts of Georgia over a period of a century, did not have a discriminatory effect. That conclusion was based on

one factor alone: the Georgia cases held that the date which began the running of the five-year limitation period was not the date of rendition of the original foreign judgment, but rather, the date of its latest revival in the foreign state. Therefore, the Florida creditor need only return to Florida, revive his judgment, and bring a new action in Georgia within five years thereafter. As long as the enforceability of the foreign judgment could be maintained by periodic revivals, an action could be brought in Georgia to enforce it. For that reason alone, the Supreme Court upheld the Georgia statute. The message could hardly be more clear, but if further amplification is needed, the Court added that if the law of the rendering state did not provide for revival "we would be faced with a different case." *Id.* at 191, note 4.

We, however, are not free to adopt an interpretation of our statute similar to that which the Georgia courts gave to theirs. Code § 8.01-252 expressly dates the beginning of the ten-year limitation period from the date the foreign judgment was "rendered." Even if we were to look to the law of Florida for a determination whether Mrs. Carter's judgment in this case was "rendered" in 1964 or 1977, we would reach the same result because Florida treats a revival as a mere continuation of the original action, not as a new judgment. *Massey* v. *Pineapple Orange Co.*, 87 Fla. 374, 377, 100 So. 170, 171 (1924). Therefore, our situation is the reverse of that in *Watkins*: here, renewal makes no difference; a foreign judgment creditor is barred when a domestic creditor would not be barred. The conclusion is inescapable that our statute of limitations, whatever its *purpose*, has the *effect* of discriminating against foreign judgment creditors.

Consideration of the purpose of the statute, in the light of present-day reality, should give us no more comfort than consideration of its effect. The statute has been a part of our law, in substantially similar form, since 1836. No doubt it served a valid legislative purpose when it was adopted. In that period, travel was slow, difficult, and often dangerous. Communication was uncertain and expensive. Discovery was virtually unavailable. In many areas of the country, court records were far less permanent, secure, and accessible than they are today. Accordingly, a defendant sued on a foreign judgment who wished to defend on the ground that the foreign court had no jurisdiction over his person, or over the subject matter, faced formidable obstacles in obtaining evidence for his defense. That argument is still advanced in defense of a statu-

tory disparity between foreign and domestic judgment creditors, but it has little persuasive force in view of the rapid travel and communications facilities and the simple discovery provisions which exist today. The Supreme Court most assuredly gave no weight to any such argument in *Watkins*.

Because neither the effect nor the purpose of Code § 8.01-252 can withstand analysis in light of the Equal Protection Clause, I would reverse.

POFF and THOMAS, JJ., join in dissent.