## Norfolk

WILLIAM CARL BENNETT

v.

COMMONWEALTH OF VIRGINIA,

DEPARTMENT OF SOCIAL SERVICES, DIVISION

OF CHILD SUPPORT ENFORCEMENT,

ex rel. DIANNE ELAINE WATERS

No. 1505-91-1

Decided September 29, 1992

136

COUNSEL

Alan S. Mirman, for appellant.

George B. Pearson, Assistant Commonwealth Attorney, City of Chesapeake, for appellee.

OPINION

**KOONTZ, C.J.**—William C. Bennett, appellant, appeals an order entered in the Family Court of the City of Chesapeake (family court) pursuant to the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (URESA), Code §§ 20-88.12, *et seq.*, awarding Dianne Waters, appellee,[1] a judgment for partial spousal support arrearages accumulated under a 1977 New Jersey divorce decree. Bennett asserts that Code § 8.01-252 operates as an absolute bar

[1] The Commonwealth of Virginia Department of Social Services, Division of Child Support Enforcement, is a party to this appeal in its representative capacity for Dianne Waters. Because the issue of child support was resolved at the trial level and is not at issue here, for clarity we will refer to Dianne Waters as the appellee.

to the entry of any judgment against him because the New Jersey decree was entered more than ten years before Waters commenced the URESA proceedings. Waters cross-claims and asserts that the family court erred in applying Code § 8.01-252 to the URESA proceedings, thereby limiting the amount of the judgment and denying her a judgment for the full amount of the arrearages accumulated under the New Jersey decree. For the reasons that follow, we hold that Code § 8.01-252 is not applicable in a URESA proceeding where the judgment of another state which is the basis of the proceeding does not adjudicate a sum certain due and owing but, rather, establishes only an ongoing, unliquidated support obligation. Accordingly, we affirm the family court's award of a judgment for partial spousal support arrearages, reverse its failure to consider the full amount of the arrearages due under the New Jersey decree, and remand for further proceedings consistent with this opinion.

The facts from which this controversy arose are presented to us in an agreed statement of facts. We further summarize the pertinent facts here. On February 3, 1977, the New Jersey court entered a final decree of divorce between the parties and ordered Bennett to pay Waters weekly spousal and child support. Waters remarried on August 29, 1982. Bennett's ongoing spousal support obligation terminated on that day. On September 12, 1990, Waters filed a URESA petition in the New Jersey court seeking spousal support arrearages accumulated prior to her remarriage. The petition was appropriately processed and came on for a hearing in the Virginia court on July 22, 1991. No testimony was taken at this hearing. The case was heard on the records, Bennett's motion to dismiss pursuant to Code § 8.01-252, and argument of counsel for both parties.

On August 31, 1991, the family court entered an order reflecting its rulings that: (1) Code § 8.01-252 acts as a statute of limitations on claims more than ten years old and, thus, bars Waters' claim for arrearages accruing prior to September 20, 1980 (ten years preceding the filing of the URESA petition on September 12, 1990); (2) all sums accruing from September 20, 1980 to August 29, 1982 (the date of Waters' remarriage) were due and owing by Bennett; and (3) Waters was entitled to a judgment in the amount of $6,630 for these arrearages. This appeal followed.

Code § 8.01-252 provides, in pertinent part, as follows: "Every action upon a judgment rendered in another state . . . shall be barred, if such action would there be barred by the laws of such state . . . , and *in*

*no event shall an action be brought upon any such judgment rendered more than ten years before the commencement of the action.''* (emphasis added).

Bennett does not assert that the present URESA proceedings would be barred by the laws of New Jersey. He does not contest the amount of the arrearage accumulated under the New Jersey decree. We also initially note that we are not presented with an issue, pursuant to Code § 20-88.18, whether the family court had jurisdiction to determine the full amount of arrearages accruing under the New Jersey decree while Bennett was present in Virginia. *See Scott v. Sylvester,* 220 Va. 182, 257 S.E.2d 744 (1979). We are also not presented an issue whether New Jersey or Virginia law applies to the determination of the amount of the arrearages actually due. *See Scott v. Sylvester,* 225 Va. 304, 302 S.E.2d 30, *cert. denied,* 464 U.S. 961 (1983). Rather, we are presented with an issue of Virginia law, specifically, the proper application of Code § 8.01-252 to a proceeding under Code § 20-88.30:6.

The provisions of these Code sections invoke the facially circular assertions of the parties on the facts of this appeal. Based upon the above emphasized language of Code § 8.01-252, Bennett asserts that the New Jersey court ''rendered'' its ''judgment'' on February 3, 1977 and Waters commenced her URESA action more than ten years later, when she filed her URESA petition on September 12, 1990. Therefore, he asserts that Code § 8.01-252 operates as an absolute bar to the recovery for any arrearages accruing under the New Jersey decree. Bennett further asserts that Code § 20-88.30:6(C) permits him to assert those defenses that would be available to him ''as defenses in an action to enforce a foreign money judgment.'' Thus, by equating a foreign ''money judgment'' to a ''judgment rendered in another state'' he asserts that Code § 8.01-252 provides one such defense in every URESA proceeding. In contrast, Waters asserts that Code § 8.01-252 has no application to a URESA proceeding. She asserts that the ''duty to pay [spousal support] arrearages'' is enforceable pursuant to Code § 20-88.20, no support order may be retroactively modified, except for the period during which there is notice to the responding party of a pending modification petition, pursuant to Code § 20-88.28:2 and, therefore, Code § 8.01-252 is not applicable to a URESA proceeding.

While the positions of the parties in this appeal are readily stated, the resolution of these contrasting positions is another matter. This is so, as will be shown, because the critical terms ''support order,''

"judgment," and "money judgment" are used in different contexts in URESA and Code § 8.01-252 and must be interpreted and applied in the context of particular facts to ensure they are given the meaning intended by our legislature. Moreover, because a "support order" is a "judgment" but not necessarily a "money judgment," the resolution of the issues presented here are complicated further. To resolve the facially circular contentions of the parties invoked by the pertinent statutes, we begin our analysis with the distinctions which must be made among support orders that adjudicate an ongoing, unliquidated spousal support obligation and those that adjudicate a sum certain or liquidated amount due and owing for spousal support. We do so to bring into proper context the terms "support order," "judgment," and "money judgment" as used in the pertinent statutes and applicable to the present case.

In common practice in legal documents, statutes and court opinions, a "decree" for spousal support entered pursuant to Code § 20-107.1, the statutory authority for such a decree, or an "order" directing the payment of spousal support entered pursuant to Title 16.1 or Title 20, the statutory authority for such an order, is often interchangeably denoted a decree, order or judgment for spousal support. In a general sense, and in most cases, a decree or order for spousal support requires the payment of money. Code § 8.01-426 embraces the terms "decree or order requiring the payment of money" within the definition of "judgment" and, thus, provides the statutory justification for the interchangeable use of these terms by legal writers in the factual context of most cases.[2] However, while spousal support orders are judgments, the distinction between a spousal support order that only adjudicates an ongoing, unliquidated spousal support obligation and one that adjudicates a sum certain or liquidated amount due and owing will determine whether a particular spousal support order is properly considered a "money judgment" in the context of a URESA proceeding. In turn, this distinction will determine the proper application of Code § 8.01-252 in a particular case.

In this Commonwealth, based upon the acknowledged uniqueness of a spousal support obligation, our legislature and our courts have drawn significant distinctions between spousal support orders and

---

[2] For purposes of our present analysis, we will hereafter use the term "spousal support order" to include a decree or judgment for spousal support. The distinction we draw between a spousal support order that only adjudicates an ongoing, unliquidated spousal support obligation, rather than a sum certain, and a "money judgment" will be made apparent in the text of the opinion.

judgments for money. *See Brown v. Brown*, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987); *Eddens v. Eddens*, 188 Va. 511, 517, 50 S.E.2d 397, 400 (1948); *West v. West*, 126 Va. 696, 699, 101 S.E. 876, 877 (1920) (discussing the essential difference between a spousal support award and a "judgment for money"). *See also* Code §§ 8.01-458 and 8.01-460 (making a distinction in the manner in which a lien upon real estate may be perfected where the lien is created by a judgment for money in the former and by a spousal support order in the latter). We need not attempt to identify all essential similarities and differences between spousal support orders and money judgments. For purposes of our present analysis, it is sufficient that we clarify those spousal support orders that are and those that are not essentially identical to money judgments. This clarification necessitates a brief discussion of the nature of Virginia spousal support orders as applicable in the context of the present case.

■ In Virginia, a spousal support order is purely a creature of statute. Code § 20-107.1 limits the support obligation to the life-time of the obligor spouse. Absent a contrary specific stipulation or contract between the parties, Code §§ 20-109 and 20-110 limit the support obligation until the death of one of the parties or the remarriage of the obligee spouse. In addition, Code § 20-109 permits the court, under proper circumstances, to increase, decrease, or terminate spousal support that may thereafter accrue, unless a stipulation or contract between the parties is filed with the court. In sum, absent a controlling stipulation or contract between the parties, the court is authorized to order appropriate periodic spousal support[3] to extend for the life-time of the parties, subject only to the termination of that order by operation of law on the remarriage of the obligee spouse.

■ When such a spousal support order is initially entered, it establishes the monetary amount of an ongoing support obligation. It is in that sense an order requiring the payment of money and is a judgment embraced within the provisions of Code § 8.01-426. It is not, and cannot be, a judgment for a sum certain or liquidated amount of money. Time and circumstances of the parties will determine ultimately the total amount to be paid under an initial, or subsequently modified, spousal support order. Moreover, because such a spousal support order is ongoing and unliquidated, it is essentially different from a money

---

[3] For purposes of this appeal, which does not involve a lump sum spousal support award but, rather, periodic payments, we will not discuss the obvious distinction between the two. *See* Code § 20-107.1.

judgment, which adjudicates a sum certain due and owing. In stark contrast, a spousal support order that adjudicates a sum certain due and owing, either for initial lump sum support or for accumulated arrearages under a prior order, is essentially identical to a money judgment.

With these distinctions to guide our further analysis, we may not simply conclude that the terms "support order," "judgment," and "money judgment" as used in the URESA sections and Code § 8.01-252 are identical for purposes of the application of these statutes to a particular support order.

We may readily conclude, however, that Code § 8.01-252 embraces an order for a sum certain or liquidated amount for spousal support rendered in another state, as well as other judgments. This Code section, by its terms, does not exclude a judgment for such spousal support. Moreover, Code § 8.01-252 has been held applicable to the enforcement of a judgment for a sum certain or liquidated amount of child support rendered in another state. *Carter v. Carter*, 232 Va. 166, 349 S.E.2d 95 (1986). *See also Taylor v. Taylor*, 14 Va. App. 642, 418 S.E.2d 900 (1992) (where a panel of this Court, in dicta, concluded that Code § 8.01-252 would apply to a District of Columbia liquidated spousal support order had the application of this statute not been mooted by the court's application of the doctrine of laches in bar of the entire claim under District of Columbia law). Code § 8.01-426 embraces a judgment for spousal support and child support. Accordingly, we conclude that Code § 8.01-252 embraces a judgment for a sum certain or liquidated amount for spousal support rendered in another state.

It then remains to be determined whether Code § 8.01-252 is applicable to a URESA proceeding, and if so, to what extent. To make this determination, we begin with specific pertinent provisions of URESA.

Code § 20-88.20 provides that "[a]ll duties of support, *including the duty to pay arrearages*, are enforceable by a proceeding under [the act]." (emphasis added). Where the duty of support is established by a support order from another state, Code § 20-88.30:5 provides the procedure to register that support order in an appropriate court in this Commonwealth. Thereafter, Code § 20-88.30:6 provides the procedure and authority of the court for the enforcement of the registered support order. Code § 20-88.30:6(A), in pertinent part, provides that:

Upon registration, *the registered foreign support order shall be treated in the same manner as a support order issued by a court of this Commonwealth.* It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this Commonwealth and may be enforced and satisfied in like manner. No support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party.

(emphasis added).

Code § 20-88.30:6(C), in pertinent part, further provides that "[a]t the hearing to enforce the registered support order the obligor may present only matters that would be available to him as defenses *in an action to enforce a foreign money judgment.*" (emphasis added).[4]

In the absence of Code § 8.01-252, the emphasized mandates of these URESA sections would direct our analysis solely to the well established law of this Commonwealth concerning the enforcement of spousal support orders in the context of money judgments. It is subparagraph (C) that invokes the application of Code § 8.01-252 to foreign support orders, thus completing the circular issue presented by this appeal. The distinction between a spousal support order that adjudicates an ongoing, unliquidated spousal support obligation and one that adjudicates a sum certain due and owing clarifies the term "support order" as used in the mandate of subparagraph (A) that a foreign support order "be treated in the same manner as a support order issued by a court of this Commonwealth." This is so because the distinction controls the way in which a particular spousal support order is treated in this Commonwealth.

We have previously established that a spousal support order that adjudicates an ongoing indeterminate spousal support obligation extends for the life-time of the parties, absent a stipulation or contract between the parties filed with the court and subject only to the

---

[4] Bennett does not assert that under New Jersey law he would have a defense to the enforcement of the present support order. Accordingly, we do not address the law of New Jersey. *Cf.* Code § 20-88.18; *Scott*, 225 Va. 304, 302 S.E.2d 30 (1983); *Taylor*, 14 Va. App. 642, 418 S.E.2d 900.

parties or the remarriage of the obligee spouse. It is also well established that the moment each installment falls due and unpaid it becomes a vested property right and is immune from modification. *See Cofer v. Cofer*, 205 Va. 834, 839, 140 S.E.2d 663, 667 (1965). When the obligor spouse fails to perform under the terms of the spousal support order, the court has the inherent authority to enforce its order by rendering a judgment in favor of the obligee spouse for the liquidated amount of the accumulated arrearages. Because of the ongoing nature of a spousal support order, no time limitation is placed upon the obligee spouse within which to obtain a judgment for accumulated arrearages. Even the doctrine of laches may not be interposed by the obligor spouse to a spousal support arrearage claim. *See Richardson v. Moore*, 217 Va. 422, 423-24, 229 S.E.2d 864, 866 (1976). Thus, while permitted in theory but seldom experienced in practice because of the apparent need to receive payments currently, an obligee spouse under a Virginia spousal support order may delay for years without limit before seeking a judgment for arrearages accumulated under that order. It is only once such a judgment for a sum certain is obtained that Code § 8.01-251, in contrast to Code § 8.01-252 concerning foreign judgments, provides a twenty-year period, unless extended, within which the obligee spouse may enforce that judgment against the obligor spouse.

These well established principles illustrate the distinction that must be drawn between a spousal support order that establishes an ongoing, unliquidated support obligation and one that establishes a sum certain or liquidated amount due and owing at a particular time for purposes of the proper application of Virginia law to Virginia spousal support orders. Similarly, it is apparent that this distinction critically impacts on the proper interpretation and application of the terms "support order," "money judgment" and "judgment" as these terms are used in URESA and Code § 8.01-252 in the context of a particular case. Specifically, the provision of Code § 20-88.30:6(A) that a "foreign support order shall be treated in the same manner as a support order issued by a court of this Commonwealth" requires an initial determination whether the foreign support order is one that establishes an ongoing, unliquidated support obligation or one that adjudicates a sum certain due and owing for accumulated support arrearages. Where the foreign support order merely establishes an ongoing, unliquidated spousal support obligation, URESA, like the general law of this Commonwealth, provides no time limitation within which the

obligee spouse may obtain a money judgment for the arrearages accumulated under such an order. In addition, because such an order is essentially different from a money judgment, the provisions of Code § 20-88.30:6(C), permitting the obligor spouse to assert defenses available to him "in an action to enforce a foreign money judgment" are not applicable. In short, *standing alone*, URESA provides no time limitation within which an obligee spouse may obtain a money judgment for accumulated spousal support arrearages under a foreign order or judgment that merely establishes an ongoing, unliquidated spousal support obligation. Once obtained, the provisions of Code § 8.01-251, rather than Code § 8.01-252, control the enforcement of that judgment in Virginia.

We have previously determined that Code § 8.01-252 is applicable where the foreign support judgment adjudicates a sum certain or liquidated amount due and owing for spousal support. Code § 20-88.30:6(C) also invokes the application of that Code section to such judgments. What then remains to be determined is whether Code § 8.01-252 is applicable in a URESA proceeding involving a foreign support order or judgment that only establishes an ongoing, unliquidated support obligation.

In *Carter*, the obligee spouse obtained a judgment in the amount of $36,000, apparently for child support, against the obligor spouse in the Florida court in 1964. In 1981, more than ten years later, the obligee spouse instituted an action in Virginia seeking a judgment on the Florida judgment. The obligor spouse pleaded the defense of Code § 8.01-252. Our Supreme Court held that the ten year period of Code § 8.01-252 began to run upon entry of the Florida judgment in 1964. The Court further held that application of the ten year limitation period of this Code section does not violate the Full Faith and Credit and Equal Protection Clauses of the United States Constitution. The Court reasoned that this Code section is procedural and the ten-year period is neither so stringent nor unreasonable as to affect a judgment creditor's substantive right. Accordingly, the Court held the ten-year period did not offend the Full Faith and Credit Clause of the Constitution. The

---

[5] The opinion reflects that this judgment was awarded in a final decree of divorce which also ordered the payment of child support. It is not clear that the liquidated amount represented child support arrearages or a lump sum spousal support award. No reference is made to a URESA proceeding. For purposes of our opinion, however, we reach the same result regardless of whether a URESA proceeding was involved and the liquidated amount represents child or spousal support.

Court further reasoned that the legislative purpose of Code § 8.01-252 was "to provide defendants in actions on foreign judgments an opportunity to challenge the personal or subject matter jurisdiction of the foreign court" and to protect such defendants "against the problems of proof following lapse of a lengthy period of time." *Carter*, 232 Va. at 172, 349 S.E.2d at 98. Because this Code section was adopted for a legitimate purpose, even though Code § 8.01-251 provides a longer period within which a domestic judgment creditor may enforce a judgment, the Court concluded that it does not violate the Equal Protection Clause of the Constitution.

Subsequently, in *Lavery v. Automation Management Consultants, Inc.*, 234 Va. 145, 360 S.E.2d 336 (1987), the Court noted that Code § 8.01-252 is not a true statute of limitations but "acts as a cutoff provision for actions based on foreign judgments . . . [and] operates as an absolute outside limit in which any suit on a foreign judgment must be brought." *Id.* at 149, 360 S.E.2d at 339.

We disagree with Bennett's assertion that *Carter* and *Lavery* establish the applicability of Code § 8.01-252 to all URESA proceedings involving a "judgment" rendered in another state. These cases establish the applicability of Code § 8.01-252 to a judgment rendered in another state that adjudicates a sum certain or liquidated amount due and owing for spousal support. A URESA proceeding to enforce such a judgment is an action brought upon a judgment rendered in another state and, thus, must be commenced within ten years of the rendition of that judgment. *Carter* does not address a URESA proceeding to enforce a foreign order establishing an ongoing, unliquidated spousal support obligation.

In the context of a spousal support order or judgment rendered in another state that merely establishes an ongoing, unliquidated support obligation, there is nothing to enforce until and unless an arrearage accrues. Such an order or judgment is essentially different from a money judgment. In short, so long as there is compliance by the obligor spouse there is no "judgment rendered in another state" upon which the provisions of Code § 8.01-252 are logically applicable. Moreover, this interpretation of Code § 8.01-252 is consistent with and furthers the remedial nature and purpose of URESA—"to improve and extend by reciprocal legislation the enforcement of duties of support." Code § 20-88.12. If Code § 8.01-252 were to bar an obligee spouse from bringing a URESA proceeding to obtain a judgment for support arrearages accumulated over a ten year period, the obligor

spouse could simply pay the current obligation for ten years and, thereafter, have an absolute defense against future obligations. Such an obligor spouse could effectively limit his obligation to ten-year increments of time. We do not believe such a result was intended by our legislature. Moreover, such a result is not mandated by the terms of Code § 8.01-252.

In summary, we hold that in a URESA proceeding where the foreign support order merely establishes an ongoing, unliquidated spousal support obligation, the provisions of Code § 8.01-252 are not applicable. Once a Virginia judgment for a sum certain for accumulated support arrearages is obtained, Code § 8.01-251 controls the time within which that judgment may be enforced in this Commonwealth. However, in a URESA proceeding where the foreign support order adjudicates a sum certain due and owing, Code § 8.01-252 acts as a cutoff provision and operates as an outside limit in which the URESA proceeding must be commenced.

Applying these holdings to the present appeal, we affirm the family court's award of a judgment for arrearages accumulated under the New Jersey decree. Because Code § 8.01-252 is not applicable to these proceedings, we reverse the family court's denial of a judgment in favor of Waters for the full amount of the arrearages accumulated under the New Jersey decree, and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

Coleman, J., concurred.

Baker, J., concurred in the result.