## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **8th** *day of* **December, 2015**.

Peter Weidlein, Appellant,

against        Record No. 2145-14-4
                 Circuit Court No. CL 2014-5297

Mimi C. Weidlein, Appellee.

From the Circuit Court of Fairfax County

Before Chief Judge Huff, Judges Humphreys, Petty, Beales, Alston, McCullough, Chafin, Decker, O'Brien, Russell and AtLee

Upon consideration of the joint motion of the parties filed herein on November 30, 2015, the Court suspends the briefing schedule, vacates the decision of the panel rendered herein on the 6th day of October, 2015, dismisses the appeal, and remands the case to the trial court for such proceedings as may be required to carry out the terms of the settlement.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:   *original order signed by a deputy clerk of the*
      *Court of Appeals of Virginia at the direction*
      *of the Court*

Deputy Clerk

PUBLISHED

PUBLISHED

# *VIRGINIA:*

*In the Court of Appeals of Virginia on*  **Tuesday**  *the*  **10th**  *day of*  **November, 2015**.

Peter Weidlein,                                                                                          Appellant,

 against                    Record No. 2145-14-4
                           Circuit Court No. CL 2014-5297

Mimi C. Weidlein,                                                                                     Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Huff, Judges Humphreys, Petty, Beales, Alston, McCullough, Chafin,
Decker, O'Brien, Russell and AtLee

On October 20, 2015 came the appellee, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on October 6, 2015, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on October 6, 2015 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b).  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  An electronic version of each brief shall be filed with the Court and served on opposing counsel.  In addition, twelve printed copies of each brief shall be filed.  It is further ordered that the appellee shall file an electronic version and twelve additional copies of the appendix previously filed in this case.[1]

A Copy,
                    Teste:

                                        Cynthia L. McCoy, Clerk
                                  *original order signed by a deputy clerk of the*
                           By:    *Court of Appeals of Virginia at the direction*
                                        *of the Court*

                                        Deputy Clerk

_____

[1]  The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:   Judges Beales, McCullough and O'Brien
Argued at Fredericksburg, Virginia

**PUBLISHED**

PETER WEIDLEIN

v.        Record No. 2145-14-4

MIMI C. WEIDLEIN

OPINION BY
JUDGE STEPHEN R. McCULLOUGH
OCTOBER 6, 2015

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Lorraine Nordlund, Judge

James Ray Cottrell (John K. Cottrell; Cottrell Fletcher Schinstock
Bartol & Cottrell, on briefs), for appellant.

David N. Webster II (The Webster Law Firm, on brief), for appellee.

This appeal arises from a post-divorce rule to show cause brought by Mimi C. Weidlein against her former husband, Peter Weidlein, for his failure to pay spousal support arrearages in excess of $400,000.  Husband first assigns error to the trial court's entry of judgment against him "for arrearages for the time period after the trial court had found that the former wife had met the terminating condition for her spousal support entitlement under the terms of the marital agreement."  His second assignment of error contends that "alternatively, the trial court erred in determining that the parties' valid oral agreement was not enforceable as a defense to the rule to show cause and to any arrearage claim."  For the reasons noted below, we reverse the judgment of the trial court.

BACKGROUND

On January 2, 1990, the parties signed a document titled "Marital Agreement."  The relevant portions of the agreement are as follows:

B.  Limitation and Release of Support, Marital, and Property
Rights by Mimi:

In the event the parties shall cease residing together due to any reason other than death, Peter shall pay to Mimi as and for her support and maintenance the sum of two thousand five hundred dollars ($2,500) per month commencing with the first day of the first month following the separation and continuing until (a) the death of either party; (b) the remarriage of Mimi; (c) the cohabitation of Mimi with another man i.e. living with another man at the same place of residence for a week or more, whichever event shall first occur.  Upon the happening of any of the foregoing events all such payments shall forever cease.

\*        \*        \*        \*        \*        \*        \*

No amendment to or change in this agreement shall be effective unless made in a separate written instrument executed by the parties hereto, with the same formalities and dignities as this agreement.

The parties separated with the intent to terminate the marriage on April 16, 1993.  On September 22, 1994, the trial court entered a stipulation and settlement order which incorporated the marital agreement, pursuant to Code § 20-109.1.  The court entered a final decree of divorce on May 5, 1995, which also incorporated the terms of the marital agreement.  The entirety of paragraph (B) was copied, verbatim, into the divorce decree itself.

On April 17, 2014, wife filed a petition for a rule to show cause for husband's alleged failure to pay spousal support.  On July 22, 2014, husband filed a motion to terminate past and future spousal support due to wife's cohabitation with a man, which, if true, would terminate husband's spousal support obligation.

At a hearing held on July 3, 2014, husband testified that he learned in 2002 that wife was cohabiting with Gilbert Moreno.  He directed his attorney to draft a cover letter and order concerning the termination of spousal support and arranged for the letter to be given to wife.  Husband testified that wife acknowledged the cohabitation, and agreed that in exchange for six months of spousal support, she would not object to his termination of spousal support.  Husband

- 2 -

testified that although the parties had an oral agreement, they did not sign the document or appear in court because they did not want to incur the costs of litigation. Accordingly, he made his final support payment in March, 2003.

Wife denied that she ever cohabited with Moreno for more than a week although each of the children testified that wife and Moreno did cohabit for more than a week on at least one occasion. She said she never received any letter or draft order from husband concerning termination of spousal support. She also denied making an oral agreement in which she agreed to termination of her spousal support in exchange for six more months of support. The parties' two sons, however, testified that wife had in fact cohabited with Moreno for a period in excess of one week and that she did so more than once. The court made a specific finding of fact that wife's testimony was not credible and resolved the issue of the existence of an oral agreement in favor of husband. The court also found that wife resided with Moreno under circumstances which would warrant termination of husband's spousal support obligation.

The court held, however, that the cohabitation provision of the decree was not self-executing and therefore, the spousal support obligation could not be modified without a court order. The court also held that the oral agreement between the parties for six additional months of support and subsequent termination of support was unenforceable because it was an oral agreement to modify, and the terms of the parties' marital agreement required any amendment to be in writing. Therefore, the court ordered husband to pay the arrearage in the amount of $437,050.60 and granted husband's motion to terminate any future support obligation.

ANALYSIS

"On appeal, the trial court's findings of fact are accorded great deference and its judgment will not be set aside unless plainly wrong or without evidence to support it." Stroud v. Stroud, 54 Va. App. 231, 236, 677 S.E.2d 629, 631 (2009). The trial court's application of

law

to those facts is reviewed *de novo*. Tuttle v. Webb, 284 Va. 319, 324, 731 S.E.2d 909, 911 (2012).

### I. THE AGREEMENT MUST BE ENFORCED ACCORDING TO ITS PLAIN LANGUAGE.

Husband contends the trial court erred in awarding wife support arrearages, which accrued after June 2003,[1] because the court found that husband proved the occurrence of a terminating condition for wife's spousal support entitlement under the terms of the marital agreement. He argues that the trial court erred in finding that the cohabitation provision of the agreement was not self-executing and that husband was required to obtain a court order before terminating spousal support payments.

This case calls upon us to harmonize two statutes. First, Code § 20-109(A) provides as a general proposition that

> Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper.

In Reid v. Reid, 245 Va. 409, 414, 429 S.E.2d 208, 211 (1993), the Supreme Court held that "Code § 20-109 provides that the divorce court may modify or terminate spousal support that 'may thereafter accrue,' but makes no provision for modifying an award for support previously accrued." Moreover, the Court in Reid noted that there was no statutory authority to order restitution of past support. Id. at 415, 429 S.E.2d at 211. Finally, we have held in a number of cases that "the moment each installment falls due and unpaid it becomes a vested property right and is immune from modification." Bennett v. Commonwealth Dep't of Soc. Servs., 15 Va. App. 135, 144, 422 S.E.2d 458, 463 (1992). However, neither this Court nor the Supreme Court has

---

[1] Although husband testified that he ceased making payments in March of 2003, the trial court found that husband ceased making payments in June of 2003.

addressed whether parties to a divorce can, by agreement, modify the default rules for accrual and vesting of monthly support.

Another statute, Code § 20-109(C), provides that once parties to divorce litigation have reached an agreement on (among other things) spousal support, the trial court must honor the agreement. "Support agreements that are voluntarily made by the parties are subject to the same rules of construction applicable to contracts generally." Goldin v. Goldin, 34 Va. App. 95, 107, 538 S.E.2d 326, 332 (2000). Where, as here, an agreement's terms are unambiguous, a court must "adhere to the plain meaning of [the] stated terms." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995).

The meaning of the agreement, as relevant here, is plain. First, husband was to pay $2,500 in monthly support. Second, "[u]pon the happening" of certain contingencies, including wife cohabiting with another man for a week or more, "such payments shall forever cease." Consequently, husband's obligations ceased when wife cohabited with another man for one week or more.

The default rule, which specifies that monthly spousal support payments accrue and become vested when they are due and unpaid, operates only in the absence of a statute that modifies this default rule. See Richardson v. Moore, 217 Va. 422, 424, 229 S.E.2d 864, 866 (1976) (per curiam) ("'[in] *the absence of statute*, payments exacted by the original decree of divorce become vested as they accrue and the court is without authority to make any change as to past due installments'" (emphasis added) (quoting Cofer v. Cofer, 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965))). Here, there is a statute, Code § 20-109(C), which provides that the agreement of the parties controls. When there is no agreement, the order of the court mandating monthly payments controls until modified by the court. Where there is such an agreement, it must be

enforced according to its plain terms.[2]  The specific provisions of Code § 20-109(C) control over

the general provisions of Code § 20-109(A).  "The rule is that 'when one statute speaks to a

subject in a general way and another deals with a part of the same subject in a more specific

manner, the two should be harmonized, if possible, and where they conflict, the latter

prevails.'" Thomas v. Commonwealth, 244 Va. 1, 22-23, 419 S.E.2d 606, 618 (1992)

(quoting Virginia

Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979)).[3]  When a trial court honors

the parties' agreement, as it must, such a judgment does not retroactively *modify* a support

award, in contravention of Code § 20-112.  Instead, it *enforces* a pre-existing award according to

its plain terms.  The same order that compelled husband to pay $2,500 in monthly support

provided that these payments would forever cease upon the happening of certain contingencies.

As agreed and incorporated into the order, the monthly spousal support obligation never accrued

– and, therefore, never vested – after the point when wife cohabited with another man for a week

or more.[4]

---

[2] The dissent cites a number of cases for the proposition that "each installment [of
spousal support] falls due and unpaid it becomes a vested property right and is immune from
modification." Bennett, 15 Va. App. at 144, 422 S.E.2d at 463.  See also Goodpasture
v. Goodpasture, 7 Va. App. 55, 58, 371 S.E.2d 845, 847 (1988); Smith v. Smith, 4 Va. App.
148,
152, 354 S.E.2d 816, 818-19 (1987).  Those cases did not involve an agreement between the
parties that specified when spousal support vested.  Therefore, this line of authority does not
supply the rule of decision in situations where the parties have reached an agreement.

[3] Code § 20-109(D) further evinces a legislative intent to permit parties to modify by
agreement the default rules governing spousal support.  That provision specifies that "spousal
support and maintenance shall terminate upon the death of either party or remarriage of the
spouse receiving support" but also specifies that these rules do not apply if the parties have
"otherwise provided by stipulation or contract."

[4] Although not binding, a recent unpublished opinion of this Court, Miller v. Green, No.
1993-14-3, 2015 Va. App. LEXIS 201 (Va. Ct. App. June 23, 2015), is distinguishable because
the terms of the agreement in that case were materially different.  Neither this case nor Miller
involved a self-executing clause terminating support.  Therefore, both this case and Miller

required a judicial determination that the cohabitation had occurred for the requisite period of time.  In the present case, the parties' agreement divested wife of any claim to spousal support "upon" the happening of wife's cohabitation with a man for a period of one week or more.

This does not mean that persons who have been ordered to pay monthly support may unilaterally cease payment based on a belief that the former spouse has forfeited the right to support. Our case law is clear that, unless the relevant provision is self-executing, a spouse who believes that the support is no longer due must obtain a judicial declaration that the monthly support is, in fact, no longer due under the incorporated agreement. Stroud, 54 Va. App. at 238-39, 677 S.E.2d at 632. The cohabitation provision at issue here was not self-executing because it was not an event that could be empirically determined. Id. As this Court previously noted, "a provision can be self-executing only when the triggering event is empirically determined, such as a date certain, reaching a specific age, or death." Id. at 238, 677 S.E.2d at 632. In Stroud, a judicial determination was required to establish whether the wife was cohabiting in a situation analogous to marriage. Id. at 234-35, 677 S.E.2d at 630-31.

When the contingency at issue is not self-executing, the paying spouse who unilaterally ceases payment risks contempt and, if the evidence fails to establish the contingency, will owe past due installments and interest. The agreement here was not self-executing. Thus, the payor's self-interest as well as the need for an orderly process require judicial resolution of such matters

_____

Therefore, when the trial court found that such cohabitation had occurred, the court was required to honor the agreement and hold that payments ceased to accrue (and, therefore, did not vest) from that date onward. Since husband had not paid them, he did not owe them. Had he paid them, he would have been entitled to a refund because that was the parties' agreement. In contrast, the agreement in Miller provided that support would cease "upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more . . . ." Id. at *2-3. The terms "clear and convincing evidence" evince an intent by the parties to provide proof in a legal proceeding. Thus, the triggering event in Miller for purposes of termination of the spousal support was not the happening of cohabitation but, instead, the proof of cohabitation by clear and convincing evidence in court. In other words, under the agreement in Miller, the obligation to make payments ceased prospectively only after the cohabitation had been established in court by clear and convincing evidence (or upon the filing of the motion to terminate spousal support, pursuant to Code §§ 20-109 and 20-112). Because the agreement did not contemplate that the payments would cease accruing the moment the cohabitation had occurred, as the agreement does in this case, the trial court in Miller lacked the statutory authority under Code § 20-109(C) to terminate the spousal support retroactively to that time.

- 9 -

rather than unilateral action. However, the need to obtain a judicial declaration does not change the fact that the judicial declaration that is made must be in accord with the parties' agreement.

Here, husband proved that wife had cohabited with another man for a week or more. Under the incorporated agreement, his support obligation ceased upon the happening of this cohabitation, and the payments wife claims husband owed after that point never vested. Accordingly, we hold that the trial court erred in ordering him to pay spousal support and interest that he, under the agreement, never owed.

## II. STROUD V. STROUD DOES NOT CONTROL.

Our decision in Stroud, 54 Va. App. 231, 677 S.E.2d 629, does not require a contrary conclusion. The issue before the Court in Stroud was whether the trial court erred in denying husband attorney's fees and costs under the terms of the former spouses' agreement. See id. at 232-33, 677 S.E.2d at 629-30. Their agreement, which had been incorporated into the divorce decree, provided that husband's monthly support obligation would cease if wife "'cohabit[ed] with any person to whom she is not related by blood or marriage in a situation analogous to marriage for a period of thirty (30) or more continuous days.'" Id. at 233, 677 S.E.2d at 630. Husband unilaterally ceased paying spousal support when he discovered that wife had, in fact, cohabited with another individual for the specified period. Id. at 233-34, 677 S.E.2d at 630. Wife then petitioned for enforcement of the court order. Id. at 234, 677 S.E.2d at 630.

The parties' agreement further provided as follows:

> DEFAULT BY PARTY. Should either [former spouse] fail to abide by the terms of this Agreement, the defaulting party will indemnify the other for all reasonable expenses and costs, including attorney's fees, incurred in successfully enforcing this Agreement.

Id. at 233, 677 S.E.2d at 630. Husband was able to prove that wife had cohabited with another individual as specified in the agreement and, therefore, ultimately succeeded in defending against

- 10 -

wife's petition. Id. at 235, 677 S.E.2d at 630-31. He then sought to recover his attorney's fees and costs. Id. at 235, 677 S.E.2d at 631.

The key question, under the agreement, was whether wife was a "defaulting party." If so, husband was entitled to attorney's fees. See id. at 239, 677 S.E.2d at 632-33. If not, she owed husband no such fees. We held that the agreement's cohabitation language was not self-executing and, therefore, that husband was "not entitled to unilaterally terminate support payments without seeking entry of a proper court order." Id. at 238-39, 677 S.E.2d at 632. We further explained,

> Once husband independently withheld support payments, wife had no choice but to seek a judicial remedy and have the trial court determine if she was cohabiting in a situation analogous to marriage. Thus, we find that wife's enforcement of the agreement was not a default, but a proper means of seeking recourse in what she believed was non-compliance with the PSA.

Id. at 239, 677 S.E.2d at 632-33. Because wife was not in "default" when she sought a judicial declaration of her rights under the agreement, she did not owe any attorney's fees. Id. at 239, 677 S.E.2d at 633.

Stroud decided a narrow point of law in connection with a particular agreement governing attorney's fees, namely, that "husband was not entitled to attorney's fees because wife was not in default in the performance of any provision of the agreement." Id. In Stroud, the Court did not address (and was not asked to address) the question now before us: Does a former husband continue to owe monthly spousal support past the point of a particular contingency's event, which, under the agreement, terminated the support obligation?

In sum, where the parties have reached an agreement that specifies when spousal support ceases to accrue, courts must enforce the agreement according to its plain terms. If an agreement that is not-self executing has been incorporated in an order of the court, parties must seek enforcement through the court. Where the payor spouse has provided monthly support payments that were not due under the agreement, the payor spouse is entitled to restitution of any excess

payments.[5]  This conclusion flows from the parties' agreement and the mandate Code

§ 20-109(C).[6]

CONCLUSION

For the foregoing reasons, we reverse the judgment below and enter final judgment in

favor of the husband.

<u>Reversed.</u>

---

[5] Here, husband ceased making his monthly payments based on his belief that wife would honor her oral agreement to terminate spousal support.  Accordingly, there is no need for the court to order restitution.

[6] In light of our holding on husband's first assignment of error, we need not reach his second assignment of error.

O'Brien, J., dissenting.

I agree with the majority that the terminating provision of the agreement in this case was not self-executing because a judicial determination was required to establish whether the terminating event occurred. I respectfully dissent from the majority's holding, however, because the trial court did not have the authority to retroactively terminate the already-vested and accrued spousal support obligation. Accordingly, I would affirm the trial court's ruling.

The majority acknowledges that Code § 20-109(A) allows a court to modify or terminate spousal support "*that may thereafter accrue*." (Emphasis added). Code § 20-112 adds that a support order may be modified or terminated "only from the date that notice of [a] petition [for modification or termination] has been given to the responding party." There is no authority that allows a court to retroactively modify or terminate spousal support. In fact, the Supreme Court repeatedly has held to the contrary. See Reid v. Reid, 245 Va. 409, 414, 429 S.E.2d 208, 211 (1993); Cofer v. Cofer, 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965) ("[I]n the absence of statute, payments exacted by the original decree of divorce become vested as they accrue and the court is without authority to make any change as to past due installments."), rev'd on other grounds by Singh v. Mooney, 261 Va. 48, 541 S.E.2d 549 (2001).[7]

_____

[7] The majority relies on the following language from Cofer as a method to apply Code § 20-109(C) as a restraint from affirming the trial court: "*in the absence of statute*, payments exacted by the original decree of divorce become vested as they accrue and the court is without authority to make any change as to past due installments." Cofer, 205 Va. at 838, 140 S.E.2d at 666 (emphasis added). However, in Cofer, the Supreme Court found that there was no statutory authority for the trial court to retroactively terminate a support obligation. The Court discussed the application of Code § 20-108 and held that "our statute (Code § 20-108, *supra*) does not authorize the court to relieve the delinquent husband of the payment of accrued installments for the support of his children due under the provisions of a former decree or order." Id. at 839, 140 S.E.2d at 667. In the present case, just as in Cofer, no statute gives the trial court license to terminate or modify support payments that already have vested.

- 13 -

Unpaid spousal support is a vested property right. "It is . . . well established that the moment each installment falls due and unpaid it becomes a vested property right and is immune from modification." Bennett v. Commonwealth Dep't of Soc. Servs., 15 Va. App. 135, 144, 422 S.E.2d 458, 463 (1992); see also Goodpasture v. Goodpasture, 7 Va. App. 55, 58, 371 S.E.2d 845, 847 (1988) ("Parties cannot contractually modify the terms of a support order without the court's approval. Nor does a party's passive acquiescence in nonpayment of support operate to bar that party from later seeking support arrearages. Should circumstances change requiring alteration in the amount of support, *a party's remedy is to apply to the court for relief*." (emphasis added)); Smith v. Smith, 4 Va. App. 148, 152, 354 S.E.2d 816, 818-19 (1987) ("[C]ourt-ordered [spousal] support becomes vested when it accrues and the courts are without authority to make any change with regard to arrearages.").

The majority asserts, however, that Code § 20-109(C) allows a court to retroactively terminate spousal support payments even when a terminating provision is not self-executing, stating that this statute requires the trial court to "honor the agreement" between the parties. However, this is a strained reading of the statute. Code § 20-109(C) only allows a court to incorporate and enforce a property settlement agreement as part of a final decree. Nothing in Code § 20-109(C) permits a party to unilaterally cease making spousal support payments, if the terminating event is not self-executing. Likewise, nothing in Code § 20-109(C) grants the court the authority to make any change to past due installments. Unless an agreement incorporated into a decree involves a child or spousal support provision that is self-executing, a party who wishes to modify or terminate a support obligation must apply to the court for modification. We have held that "[i]t is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree . . . . [When circumstances change, to] warrant a change in the terms of the decree . . . [the husband's] remedy is to apply to the court for such relief."

Sanford v. Sanford, 19 Va. App. 241, 246, 450 S.E.2d 185, 188 (1994) (alterations in original) (quoting Newton v. Newton, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961)).

The majority agrees that the cohabitation terminating provision at issue in this agreement was not self-executing. In fact, a contested hearing was held and the court made certain findings regarding cohabitation. As this Court noted, "[A] provision can be self-executing only when the triggering event is empirically determined, such as a date certain, reaching a specific age, or death." Stroud v. Stroud, 54 Va. App. 231, 238, 677 S.E.2d 629, 632 (2009).

The majority attempts to distinguish Stroud because that case addressed the issue of payment of attorney's fees. However, the awarding of attorney's fees turned on precisely the same issue that we address here: "[D]oes a former husband continue to owe monthly spousal support past the point of a particular contingency's event, which, under the agreement, terminated the support obligation?" Supra at 9. In Stroud, the Court had to answer that question in order to determine whether wife "defaulted" under the terms of the marital agreement, authorizing husband to seek attorney's fees. A judicial determination was required to establish whether the wife violated one of the terms of the agreement. Id. at 234-35, 677 S.E.2d at 630-31. Therefore, the "husband was not entitled to unilaterally terminate support payments without seeking entry of a proper court order." Id. at 238-39, 677 S.E.2d at 632. We reached the same conclusion in the recent unpublished opinion of Miller v. Green, No. 1993-14-3, 2015 Va. App LEXIS 201 (Va. Ct. App. June 23, 2015), which, like the case before us, contained a termination clause that was not self-executing.

Unfortunately, when a party ignores the requirement for a judicial determination of a non-self-executing termination clause, and proceeds to unilaterally terminate support, the result may appear inequitable. The law, however, clearly mandates such a result. Accordingly, I would affirm the ruling of the trial court and must respectfully dissent from the majority opinion.