COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Agee* and Kelsey
Argued at Salem, Virginia


CLINCHFIELD COAL COMPANY
                                          OPINION BY
v.    Record No. 1727-02-3        JUDGE D. ARTHUR KELSEY
                                         MARCH 11, 2003
FARRELL D. REED


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Timothy W. Gresham (J. Jasen Eige;
            Lisa Frisina Clement; Penn, Stuart &
            Eskridge, on brief), for appellant.

            Susan D. Oglebay for appellee.


     The Virginia Workers' Compensation Commission awarded Farrell

D. Reed medical benefits for coal workers' pneumoconiosis (CWP)

pursuant to our decision in Jones v. E.I Dupont de Nemours & Co.,

24 Va. App. 36, 480 S.E.2d 129 (1997).  The appellant, Clinchfield

Coal Company, appeals this award urging us to reverse Jones.

Short of that, Clinchfield argues that we should limit Jones to

cases involving asbestosis and not apply it to claimants with CWP.

Finally, Clinchfield asserts that the medical evidence fails as a

matter of law to demonstrate that Reed has CWP at this time.

     We affirm the commission and hold that (i) we have no

authority to revisit Jones, (ii) both the rationale and the

_____
     * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

holding of Jones govern CWP as well as asbestosis, and (iii) the commission did not err in finding that Reed has CWP.

I.

On appeal, "we view the evidence in the light most favorable to the prevailing party" before the commission. Tomes v. James City (County Of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002); Grayson County Sch. Bd. v. Cornett, 39 Va. App. 279, 281, 572 S.E.2d 505, 506 (2002).

Dr. Kathleen DePonte diagnosed Reed with CWP (sometimes known as black lung disease) on April 6, 2001. "Coal worker's pneumoconiosis is a disease of the lung that results from the accumulation of coal dust in the lungs." Penley v. Island Creek Coal Co., 8 Va. App. 310, 312, 381 S.E.2d 231, 233 (1989). On April 13, 2001, Reed filed an occupational disease claim seeking benefits for the disease.

Clinchfield conceded Dr. DePonte's communication of diagnosis and stipulated that Reed was "last injuriously exposed to the hazards of coal dust while working" for Clinchfield. Reed, in turn, agreed to be bound by the diagnostic findings of The Medical College of Virginia Occupational/Pulmonary Committee (the "pulmonary committee"). See Va. Work. Comp. R. 10.2 & 10.3.

The deputy commissioner found "from the opinion expressed by the pulmonary committee that claimant has less than a category one level of the disease and is therefore not entitled to weekly benefits." The deputy commissioner, however, noted "the pulmonary

-

committee advised that claimant does have evidence of the disease and that he has small opacities classified as qq in the four upper lung zones with a profusion of 0/1." Since there was "no contrary medical opinion of record," the deputy commissioner held, on the basis of Jones, that Reed was entitled to a medical award. Clinchfield requested review by the full commission, which affirmed the deputy commissioner's award.

## II.

Though we defer to the commission in its role as fact finder, we "review questions of law de novo," Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999), and do not consider ourselves "bound by the legal determinations made by the commission." Grayson County Sch. Bd., 39 Va. App. at 281, 572 S.E.2d at 506 (quoting Robinson v. Salvation Army, 20 Va. App. 570, 572, 459 S.E.2d 103, 104 (1995)); see also Sturtz v. Chesapeake Corp., 38 Va. App. 672, 675, 568 S.E.2d 381, 383 (2002). Even so, with regard to the commission's interpretation of its enabling statutes, "we follow the settled rule that the construction accorded a statute by public officials charged with its administration is entitled to be given weight by the courts." Sturtz, 38 Va. App. at 675, 568 S.E.2d at 383.

The Virginia Workers' Compensation Act should be regarded as "remedial legislation and should be liberally construed in favor of the injured employee." E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d 685, 687 (2002) (citing Byrd

-

v. Stonega Coke & Coal Co., 182 Va. 212, 221, 28 S.E.2d 725, 729 (1944)). That liberality, however, has its limits. We cannot "permit a liberal construction to change the meaning of the statutory language or the purpose of the Act." American Furniture Co. v. Doane, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985).

### III.

### A.

Clinchfield first urges us to overrule Jones v. E.I Dupont de Nemours & Co., 24 Va. App. 36, 480 S.E.2d 129 (1997). Under our rule of interpanel accord, however, we lack the authority to revisit Jones. See Commonwealth v. Burns, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990) (quoting Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987)). The decision of one panel "becomes a predicate for application of the doctrine of stare decisis" and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court. Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996). This principle applies not merely to the literal holding of the case, but also to its ratio decidendi — the essential rationale in the case that determines the judgment. For this reason, we reject Clinchfield's request that Jones be overruled.

### B.

Clinchfield next argues that Jones does not apply to cases involving medical benefits for CWP. On this point, Clinchfield appears to divide the fact-specific holding of Jones from its

-

ratio decidendi — urging that only the former, but not the latter, has stare decisis weight. We do not accept this segmentation of Jones, finding its rationale and result equally applicable to this case.

Jones addressed the question whether an employee with asbestosis was entitled to medical benefits even though the disease had not risen to the level of a "permanent loss" under Code § 65.2-503. The employer argued that an occupational disease which "has not reached a ratable level under Code § 65.2-503 is not a compensable occupational disease and renders the claimant ineligible for any benefits under the Act." Jones, 24 Va. App. at 38, 480 S.E.2d at 130.

Jones rejected the employer's argument, ruling that "[s]imply because the disease fails to rise to the level of a permanent loss on the schedule of Code § 65.2-503 does not automatically preclude an award of medical benefits." Id. Instead, "Code § 65.2-403 allows an award of medical benefits to employees who have an occupational disease covered by the Act." Id. After reviewing the "statutory language and the factual findings of the commission," Jones found that the employee's condition fell "within the definition of an occupational disease." Id. Under this analysis, "whether a permanent loss compensable under Code § 65.2-503 accompanies the disease has no impact upon an award under Code § 65.2-403." Id. The employee in Jones, therefore, was "entitled to medical benefits under Code § 65.2-403." Id.

-

Jones relies on the plain language of Code § 65.2-403(B), which states that an "employee who has an occupational disease that is covered by this title shall be entitled to the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident." Jones, 24 Va. App. at 38, 480 S.E.2d at 130. Nothing in Code § 65.2-403(B) requires that the occupational disease qualify for permanent loss or disability compensation before medical benefits may be awarded. Under Code § 65.2-403(B), the sole inquiry is whether the disease qualifies as an "occupational disease that is covered by this title" —— if so, medical benefits may be awarded.[1]

Jones equates occupational diseases to injuries by accident for purposes of medical benefits. By doing so, Jones recognizes that both sets of conditions can give rise to two unique

---

[1] Clinchfield cites dicta in Parris v. Appalachian Power Co., 2 Va. App. 219, 343 S.E.2d 455 (1986), to support its argument that "occupational diseases are not per se compensable." This language was taken from a headnote in Long v. W. Va. Pulp & Paper Co., 46 O.I.C. 140, 141 (1964), and was unnecessary to our decision in Parris regarding whether the statute of limitations had run on a workers' compensation claim. Moreover, Long, the opinion underlying the Parris dicta, decided only the issue whether the claimant was entitled to wage compensation —— it made no rulings regarding medical benefits.

Clinchfield also cites Merrimac Anthracite Coal Corp. v. Showalter, 158 Va. 227, 163 S.E. 73 (1932), for the proposition that "in a case of injury by accident, a medical award cannot be issued unless the claimant suffered a compensable injury by accident." In Merrimac, however, the claimant was denied not only medical benefits, but all benefits because the "injury was the result of his wilful [sic] misconduct . . . ." The Act, therefore, expressly barred the claimant from receiving any compensation at all. Merrimac does not distinguish medical benefits from wage and disability compensation.

-

categories of benefits.  See generally Arthur Larson & Lex K.

Larson, Larson's Workers' Compensation Law § 57.10 (1999).  The

first category of benefits consists of "wage loss payments based

on the concept of disability."  Id.  The second category consists

of the "payment of hospital and medical expenses occasioned by any

work-connected injury, regardless of wage loss or disability."

Id. (emphasis added).[2]

   We disagree with Clinchfield that, for purposes of medical

benefits under Jones, CWP should be treated differently than

asbestosis.  It is true that the Act often distinguishes between

the two.  See, e.g., Code § 65.2-405 (notice provisions); Code

§ 65.2-406 (limitations); Code §§ 65.2-503 and 65.2-504 (permanent

loss and disability).  But on the critical point — medical

benefits — Code § 65.2-403(B) makes no distinction between them.

--------

[2] Our application of Jones to occupational injuries tracks
similar rulings from other state courts.  See, e.g., J.T. Thorp,
Inc. v. Worker's Comp. Appeals Bd., 153 Cal. App. 3d 327, 1984
Cal. App. LEXIS 1782 (1984) ("[A]n employee suffering from
asbestosis may obtain reimbursement for predisability medical
expenses."); Roberson v. Harford Accident & Indem. Co., 234 S.E.2d
145 (Ga. Ct. App. 1977) (there is "no inconsistency" in directing
the payment of medical expenses while denying other compensation
benefits); Shepherd v. The Gas Serv. Co., 352 P.2d 48 (Kan. 1960)
("An award providing for the payment of certain medical treatment
and care . . . is an award of compensation" and employees are
entitled to such benefit even if the injury does not warrant loss
of wage or disability compensation.); In re Ryciak, 186 N.E.2d 408
(N.Y. 1962) (holding that an employee may be awarded costs for
medical treatment arising from an occupational disease before any
loss of wages accrues); In re Finch, 761 P.2d 544 (Or. App. 1988)
(holding that diagnostic medical services are compensable even
though the occupational disease warrants no other compensation).

-

Moreover, as the commission noted, "pneumoconiosis is a generic term used to describe a chronic fibrous reaction in the lungs related to the inhalation of dust, and includes asbestosis, silicosis, byssiniosis, coal worker's pneumoconiosis and siderosis."  As the commission further noted, "Asbestosis is but one of the several occupationally-induced pneumoconioses for which workers' compensation benefits, including medical benefits, are available."  Like other pneumoconioses, the Act treats asbestosis and CWP substantially alike when measuring the progressive "stages" of the diseases.  See Code §§ 65.2-503, 65.2-504; Va. Work. Comp. R. 11.  The rationale of Jones, therefore, applies equally to CWP as well as to asbestosis.

C.

Clinchfield also argues that, even if Code § 65.2-403 authorizes medical benefits in the absence of a compensable occupational disease, the claimant must still prove he has a disease in the first place.  As Clinchfield sees it, Reed's condition cannot be treated as a "disease" because the pulmonary committee rated his radiographs as category 0/1 as defined by the Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses, ILO Occup. Safety and Health Ser. No. 22 (rev. ed. 1980).  That rating, Clinchfield asserts, means that no recognizable CWP can exist as a matter of law.

Clinchfield bases its argument predominantly on a chart contained in a law review article written by a physician.  See N.

-

LeRoy Lapp, A Lawyer's Medical Guide to Black Lung Litigation, 83

W. Va. L. Rev. 721, 729-31 (1981).  The chart, reproduced below,

purports to divide the ILO categories into two diagnostic subsets:

"No Pneumoconiosis" and "Definite Pneumoconiosis."

| 0/- 0/0 0/1 | 1/0 1/1 1/2 | 2/1 2/2 2/3 | 3/2 3/3 3/4 |
|---|---|---|---|
| Category 0 | Category 1 | Category 2 | Category 3 |
| No Pneumoconiosis | Definite Pneumoconiosis | | |

We published this chart in Penley, 8 Va. App. at 312, 381 S.E.2d

at 233, as a part of a general description of the "radiology of

coal worker's pneumoconiosis."  Though we treated the chart as

informative, neither our holding in Penley nor its rationale

turned on the line drawn between the "No Pneumoconiosis" and the

"Definite Pneumoconiosis" subsets separating ILO category 0 from

categories 1, 2, and 3.[3]  Whether such a categorical line exists,

therefore, merits closer scrutiny.

---

[3] In Penley, the claimant appealed the commission's denial
of permanent partial disability benefits under Code § 65.1-56.1
(now Code § 65.2-504).  Penley analyzed the issue whether the
disease qualified for disability benefits under Code
§ 65.2-504's precursor, which expressly required that the
disease be at least stage one, as opposed to § 65.2-403, which
contains no such requirement.

Our analysis begins with Code § 65.2-403(B), which Jones held authorizes medical benefits when the claimant's disease qualifies as an "occupational disease that is covered by this title."[4]  We agree with Clinchfield that the 1980 ILO Guidelines play a valuable role in determining whether the disease of CWP exists.  To be sure, the three statutory "stages" employed by Code §§ 65.503(B) and 65.2-504(A) incorporate by reference the 1980 ILO Guidelines.  See also Va. Work. Comp. R. 11 (table converting multiple ILO "categories" to one of three statutory "stages").[5]  The principal purpose of the 1980 ILO Guidelines, however, is to provide "a means for recording systematically the radiographic abnormalities in the chest provoked by the inhalation of dusts."  1980 ILO Guidelines at 1.  The ILO Guidelines do not "define pathological entities," id., or serve as an inflexible matrix for pinpointing the moment a nascent condition develops into a diagnosable lung disease.

We reject Clinchfield's argument that, under ILO interpretative principles, Reed's 0/1 profusion rating

---

[4] Code § 65.2-400 defines an "occupational disease" generally, but provides no criteria for diagnosing specific diseases.

[5] Under the commission's rating table, the profusion level of opacities for any pneumoconiosis must be at least an ILO category 1/0 to qualify for any staging level under the Act. None of the three statutory stages corresponds to an ILO category 0/-, or 0/0, or 0/1.  See Va. Work. Comp. R. 11 (conversion table).

-

disqualifies him as a matter of law from receiving a CWP diagnosis.[6] That rating does not, standing alone, disprove the existence of CWP. Under the ILO Guidelines, if the pulmonary committee had concluded that the appearances were "definitely not pneumoconiosis," id. at 3, no profusion rating would have been assigned at all and the committee would have relied only on the Symbols and Comments sections of the ILO Form. Symbols denote alternative diagnoses such as cancer, emphysema, fractured ribs, tuberculosis, and the like. Id. at 9-10. "Comments must be recorded about appearances which are definitely or probably not pneumoconiosis." Id. at 12. In addition, the pulmonary committee noted that the size and shape of Reed's small, rounded opacities fit within the "q" level, denoting sizes between 1.5 and 3 millimeters. Id. at 6. For these reasons, we hold that the commission had before it credible medical evidence that Reed suffered from CWP.

IV.

In sum, we have no authority to revisit Jones. Both the rationale and the holding of Jones apply to CWP just as much as

---

[6] The 1980 ILO Guidelines set forth four major profusion categories (0, 1, 2, and 3), each with three subcategories. They thereby create twelve discrete subcategories each containing a numerator indicating the actual or final classification and a denominator indicating any other category, if any, seriously considered by the individual reviewing the radiograph. A category "0" profusion level (which includes 0/-, 0/0, and 0/1) can be used to indicate that small opacities are "absent" or that small opacities exist but are "less profuse than the lower limit of category 1." ILO Guidelines at 4.

-

they do to asbestosis.  Under Jones, the commission had sufficient evidence to conclude that Reed has CWP, an occupational disease warranting medical benefits under Code § 65.2-403(B).

Affirmed.

-