COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Senior Judge Coleman
Argued at Alexandria, Virginia


EDWARD W. ADCOCK

OPINION BY
v.       Record No. 1681-09-4                       JUDGE ROBERT P. FRANK
JUNE 8, 2010
COMMONWEALTH OF VIRGINIA,
   DEPARTMENT OF SOCIAL SERVICES,
   DIVISION OF CHILD SUPPORT ENFORCEMENT
   *ex rel*. MILDRED A. HOUCHENS


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

Michael W. Smith (R. Braxton Hill, IV; W. Scott Street, III; A. Peter
Brodell; Christian & Barton, L.L.P.; Williams Mullen, P.C., on
briefs), for appellant.

Gary P. Webb, Special Counsel (William C. Mims, Attorney
General; Craig M. Burshem, Senior Assistant Attorney General;
Beth J. Edwards, Regional Senior Assistant Attorney General;
Nancy J. Crawford, Regional Senior Assistant Attorney General;
Janice W. McDaniel, Assistant Attorney General, on brief), for
appellee.


Edward W. Adcock, appellant, appeals an order entered July 8, 2009, denying his statute

of limitations defense and awarding a judgment in favor of Mildred A. Houchens, appellee,[1] in

the amount of $73,629.10[2] principal and interest.  On appeal, Adcock contends the trial court

erred in ruling the statute of limitations did not bar the recovery of past due child support

payments nor accrued interest.  For the reasons stated, we affirm the trial court.

---

[1] Because the Division of Child Support Enforcement acts only as Houchens' agent in
these proceedings, Houchens and Division of Child Support Enforcement will be collectively
referred to as appellee.

[2] Appellant does not contest the computation of the arrearage nor the accrued amount of
interest.

BACKGROUND

The facts relevant to this analysis are uncontested. The parties were divorced by decree of the Corporation Court of the City of Alexandria on October 20, 1966. In that decree, appellant was ordered to pay $30 per week child support for three minor children. Child support would continue "until all such children attain their majorities or became otherwise emancipated or further decree of this court." Appellant's child support obligation terminated on June 24, 1982, when the youngest child attained his majority.

On June 14, 2006, appellee applied for the services of the Division of Child Support Enforcement (hereafter DCSE) to enforce the October 20, 1966 child support order. DCSE, by motion filed July 7, 2008, moved the circuit court to establish arrearage and interest for unpaid child support.

Appellant filed a motion for summary judgment on February 20, 2009, arguing the statute of limitations barred recovery. After hearing evidence and argument, the trial court denied appellant's motion for summary judgment and entered judgment against appellant for $73,629.10, finding the twenty-year statute of limitations did not bar enforcement of the 1966 child support order.

This appeal follows.

ANALYSIS

Appellant contends the twenty-year statute of limitations set forth in Code § 8.01-251[3] bars appellee's enforcement of the 1966 child support order. Appellee argues the twenty-year

_____

[3] Code § 8.01-251(A) provides:

> No execution shall be issued and no action brought on a judgment, including a judgment in favor of the Commonwealth and a judgment rendered in another state or country, after 20 years from the date of such judgment or domestication of such judgment, unless the period is extended as provided in this section.

limitation only applies to a liquidated money judgment, not, as here, to an unliquidated ongoing

support obligation.[4]

Appellant notes that Code § 16.1-278.15(c) provides:

> In any determination of support obligation under this section, the
> support obligation as it becomes due and unpaid creates a
> judgment by operation of law. Such judgment becomes a lien
> against real estate only when docketed in the county or city where
> such real estate is located. Nothing herein shall be construed to
> alter or amend the process of attachment of any lien on personal
> property.

Appellant therefore concludes that because the child support order is a judgment, the twenty-year

statute of limitations of Code § 8.01-251(A) bars enforcement of the 1966 child support order.

He contends the twenty-year period began to run on June 24, 1982, when his youngest child

reached the age of majority and his child support obligation ended.

"In determining whether the trial court made an error of law, 'we review the trial court's

statutory interpretations and legal conclusions *de novo*.'" Rollins v. Commonwealth, 37

Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) (quoting Timbers v. Commonwealth, 28 Va. App.

187, 193, 503 S.E.2d 233, 236 (1998)).

Our inquiry, then, is whether the twenty-year statute of limitations of Code § 8.01-251(A)

applies to an unliquidated, ongoing child support order, such as we have here, or if the statute is

---

[4] Since appellant does not argue that the equitable doctrine of laches bars the enforcement
of the support order, we will not address that issue.

limited to a liquidated money judgment.  Appellant contends there is no distinction for the

purpose of Code § 8.01-251(A).[5]

Appellee argues Bennett v. Commonwealth, Dep't of Social Services, 15 Va. App. 135,

422 S.E.2d 458 (1992), controls.  We agree.

In Bennett, we held the limitations under Code § 8.01-252[6] did not apply to the

enforcement of a New Jersey spousal support order under Code § 20-88.20 of the Uniform

Reciprocal Enforcement of Support Act (URESA).[7]  15 Va. App. at 147, 422 S.E.2d at 465.  The

New Jersey order was an ongoing, unliquidated support obligation.  Id.

We noted the distinction between "support orders that adjudicate an ongoing,

unliquidated spousal support obligation and those that adjudicate a sum certain or liquidated

amount due and owing for spousal support."  Id. at 140, 422 S.E.2d at 461.  We further noted the

distinction between a "support order," a "judgment," and a "money judgment" in a statute of

limitations context.  Id. at 142, 422 S.E.2d at 462.  We concluded that the statute of limitations in

---

[5] Appellant contends a West Virginia case, Zanke v. Zanke, 404 S.E.2d 92 (W. Va. 1991), supports his position.  Indeed it does.  However, since we find our decision in Bennett v. Commonwealth, Dep't of Social Services, 15 Va. App. 135, 422 S.E.2d 458 (1992), controlling, and inconsistent with the Zanke opinion, we do not afford any weight to Zanke.

[6] Code § 8.01-252, as enacted at the time of Bennett, stated:

> Every action upon a judgment rendered in another state or country shall be barred, if such action would there be barred by the laws of such state or country, and in no event shall an action be brought upon any such judgment rendered more than ten years before the commencement of the action was repealed (Acts 2005, cc. 139, 203) and re-enacted in § 8.01-251(A) with a 20-year limitation.

[7] In 1994, Virginia repealed Code §§ 20-88.12 to -88.31, the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), and enacted Code §§ 20-88.32 to -88.82, the Uniform Interstate Family Support Act (UIFSA).  Both acts, as well as the original URESA, were intended to provide "a means to establish and enforce child support obligations and spousal support obligations across state lines."  John J. Sampson and Paul M. Kurtz, UIFSA: An Interstate Support Act for the 21st Century, 27 Family Law Quarterly 85, 86 (1993).

Code § 8.01-252 (now § 8.01-251) applies only to a "judgment for a sum certain or liquidated amount for spousal support rendered in another state." Id. If, however, the ongoing unliquidated foreign support order was reduced to a liquidated amount in Virginia, then the statute of limitations in Code § 8.01-251 would govern. Id. at 147, 422 S.E.2d at 465.

Bennett made it abundantly clear that "no time limitation is placed upon the obligee spouse within which to obtain a judgment for accumulated arrearages." Id. at 144, 422 S.E.2d at 463. In fact, we stated "an obligee spouse under a Virginia spousal support order may delay for years without limit before seeking a judgment for arrearages accumulated under that order." Id.

Appellant argues the Bennett analysis, addressing the difference between an unliquidated support order and a liquidated money judgment, is *dicta*. We disagree. Rather, this distinction is essential to the central *ratio decidendi* of the opinion. See Deiter v. Commonwealth, 205 Va. 771, 775, 139 S.E.2d 788, 791 (1965) (noting that *dicta* is language that is "not responsive to the question presented and . . . not necessary to a disposition of the case"). Indeed, without the distinction between unliquidated and liquidated support judgments, this Court could not decide the applicability of the statute of limitations. Therefore, it is not *dicta*.

Appellant further attacks Bennett, contending we misapplied Taylor v. Taylor, 14 Va. App. 642, 418 S.E.2d 900 (1992). Specifically, appellant points to language in Bennett that characterized the D.C. support order in the Taylor case as a "liquidated" support order. Taylor found that laches barred appellant's claim for support arrearages. 14 Va. App. at 648, 418 S.E.2d at 903. After discussing whether the Code § 8.01-252 statute of limitations barred enforcement of the foreign support order, this Court in Taylor concluded that the applicability of the statute of limitations is "mooted by the trial court's invocation of the doctrine of laches . . . a ruling we uphold." Id. at 648-49, 418 S.E.2d at 904. Clearly, any analysis of the applicability of Code § 8.01-252 in Taylor is pure *dicta*. Thus, it is irrelevant in the Bennett analysis whether the

D.C. support order was liquidated or unliquidated. The <u>Bennett</u> analysis of the statute of limitations is not based on <u>Taylor</u>.

We also disagree with appellant's further efforts to distinguish <u>Bennett</u>. He posits that <u>Bennett</u> is based on New Jersey law, which provides that support payments do not vest and are subject to retroactive modification, unlike Virginia law. He also argues <u>Bennett</u> is limited to the enforcement of foreign judgments.

The fact that New Jersey law may not vest support payments is unrelated to the <u>Bennett</u> analysis. It has no bearing on whether the support order is liquidated or unliquidated. The fact that in New Jersey a support order or arrearage may be modified does not alter the <u>Bennett</u> analysis. Appellant's argument is premised on the fact that the <u>Bennett</u> Court considered the New Jersey law on non-vesting. However, a review of <u>Bennett</u> refutes this premise. <u>Bennett</u> does not mention the New Jersey law of non-vesting. Thus, it could not have been a consideration in the <u>Bennett</u> analysis.

Further, <u>Bennett</u> has a much wider scope than appellant suggests. While the issue before us in <u>Bennett</u> was whether the ten-year statute of limitations (now twenty-year) of Code § 8.01-252 barred the enforcement in Virginia of a New Jersey support order under URESA, the analysis and decision have broader implications.

The discussion of the liquidated and unliquidated judgment, while in a URESA context, was not limited to a URESA proceeding. <u>Bennett</u> addressed the nature of Virginia spousal support orders. This Court acknowledged that the initial entry of a spousal support order "establishes the monetary amount of an ongoing support obligation. It is in that sense an order requiring the payment of money and is a judgment embraced within the provisions of Code § 8.01-426." <u>Bennett</u>, 15 Va. App. at 141, 422 S.E.2d at 462.

However, we opined an ongoing support order "is not, and cannot be, a judgment for a sum certain or liquidated amount of money. Time and circumstances of the parties will determine ultimately the total amount to be paid under an initial, or subsequently modified, spousal support order." Id. Thus, our analysis of the distinction between an ongoing, unliquidated support order and a liquidated money judgment under Virginia law transcends a URESA proceeding.

Appellant contends a support judgment does not have to be reduced to a liquidated amount for enforcement procedures to be initiated. Appellant refers to DCSE's collection of $6,507.57 in arrearage prior to the entry of the liquidated judgment.[8] Thus, reasons appellant, an ongoing unliquidated support order is enforceable upon entry of that order. We acknowledge that under Title 19, Child Support Enforcement, Code § 63.2-1900 *et. seq.*, DCSE can enforce support orders without having the amount due reduced to a sum certain. However, the statutory authority to do so does not alter the clear mandate of Bennett, as previously discussed, as it relates to the statute of limitations. Appellant's argument addresses whether Bennett was decided correctly. While we believe it was, we are bound by that decision. See Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003) (discussing that a "decision of one panel 'becomes a predicate for application of the doctrine of *stare decisis*' and cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court" (citation omitted)).

While Bennett addresses spousal support, we see no principled reason why the analysis does not apply to child support. Rather, logic suggests that the analysis would apply to both.

---

[8] While the record reveals that $6,507.57 was involuntarily collected from appellant by DCSE, the record does not indicate whether those sums collected were the result of withheld income pursuant to Code § 63.2-1924, seizure of real or personal property pursuant to Code § 63.2-1927, or any other enforcement provision under Title 19.1.

Code § 8.01-458, creating a lien on real estate by a support order, makes no distinction between child and spousal support. Rather, it addresses the implications of "any judgment for money rendered in this Commonwealth by any state or federal court or by confession of judgment." Code § 16.1-278.15 addresses child and spousal support together, and subsection (c), creating a judgment for due and unpaid support, encompasses both spousal and child support, drawing no distinction between them. Code §§ 63.2-1900 through 63.2-1960 authorize the DCSE to enforce child support and spousal support under certain circumstances. Code §§ 20-88.32 through 20-88.82, the UIFSA, provides for the enforcement of both foreign child and spousal support orders. Under the Workers' Compensation Act, Code § 65.2-531, compensation benefits are subject to spousal and child support claims. Thus, it is clear that both the legislature and this Court intended, for enforcement purposes, to equate child support with spousal support.

The dissent acknowledges that Bennett controls this case, but opines that the principles of Bennett "do not necessarily dictate the result reached by the majority." The dissent then attempts to distinguish Bennett. However, the dissent's effort to distinguish Bennett is based on two faulty premises.

The dissent contends first, that child support and spousal support orders lead to different statute of limitations analyses, and second, that emancipation of the child converts an unliquidated child support order to a fixed sum certain. The dissent attempts to distinguish Bennett primarily because it addresses an ongoing spousal support award and not child support that has terminated by operation of law. The dissent therefore concludes that while the ongoing award is unliquidated, the child support award becomes fixed and ascertainable when it terminates by operation of law.

- 8 -

The dissent attempts to differentiate spousal support and child support because "there is a significant fundamental difference" as to when spousal support and child support terminate by operation of law. The dissent contends that child support terminates when the child attains the age of majority. However, at some point, both child support and spousal support terminate and cease to be an "ongoing" award. Spousal support terminates by operation of law when either party dies or the obligee remarries. See Code § 20-109. Further, it is important to note that under certain circumstances, child support does not necessarily terminate upon the age of majority; for example, if the child is severely and permanently mentally or physically disabled, or if the child is a full-time high school student and under the age of nineteen. See Code § 20-124.2(c).

Finally, the dissent concludes that emancipation automatically converts any child support arrearage from an unliquidated, ongoing order to a fixed and ascertainable sum certain. Thus, it concludes, the statute of limitations begins to run when the arrearage is fixed and ascertainable.

The dissent takes the Bennett language, "a judgment for a sum certain or liquidated amount" out of context. Bennett, in analyzing when the statute of limitations begins to run, clearly speaks of a liquidated judgment. We noted the distinction between "support orders that adjudicate an ongoing unliquidated spousal support obligation and those that adjudicate a sum certain or liquidated amount due and owing." The dissent ignores this distinction.

We, therefore, reject the dissent's equating "ascertainable" with "liquidated." They are two distinct concepts. To "ascertain" is "to discover through examination or experimentation; find out" or "to make certain and definite." The American Heritage Dictionary, New College Edition 76 (1982). A "sum certain" is defined as "any amount that is fixed, settled, or exact." Black's Law Dictionary 1573 (9th ed. 2009). The latter is the same as a liquidated amount.

We must, then, inquire how emancipation of a child instantly converts an undetermined amount of arrearage to a fixed amount, one that is exact, without further court intervention. The fact that child support is no longer "ongoing" does not "fix" the amount due. The dissent concludes that upon emancipation, any arrearage due is a "sum certain" because it can be readily computed. While the amount may be "readily computed," it does not follow that the sum is fixed. The amount becomes a "sum certain" only when the trial court enters an order liquidating the obligation. The Bennett analysis, again, is premised on a fixed or liquidated judgment.

The dissent further maintains an ongoing support order cannot be liquidated because future payments are still owed. To the contrary, courts routinely determine the amount of arrearage for ongoing support payments. Evidence is produced, and the court enters judgment for a sum certain. The amount of any award is always ascertainable, whether "ongoing" or not.

In summary, we conclude that the twenty-year statute of limitations in Code § 8.01-251 only applies to a liquidated money judgment. In this case, the child support order was ongoing, rather than a liquidated money judgment. Therefore, the statute of limitations provided in Code § 8.01-251 does not bar enforcement of the award.

CONCLUSION

The trial court properly ruled that the statute of limitations did not bar the recovery of past due child support payments and accrued interest. Finding no error, we therefore affirm the trial court.

Affirmed.

- 10 -

Coleman, J., dissenting.

Relying on <u>Bennett v. Commonwealth</u>, 15 Va. App. 135, 422 S.E.2d 458 (1992), the majority "conclude[s] that the twenty-year statute of limitations in Code § 8.01-251 [to bring an 'action . . . on a judgment'] only applies to a liquidated money judgment." Thus, because the spousal support decree in <u>Bennett</u> established an award that was ongoing and continued to accumulate periodically until the wife or obligor spouse died or remarried and further was subject to modification by the trial court, the amount due was unliquidated until such time that an arrearage had been determined. Accordingly, the majority reasons, that like the situation in <u>Bennett</u>, where, as here, the child support arrearage had not been reduced to a money judgment, the amount of child support owed by appellant was an "unliquidated, ongoing child support order," and, therefore, the Code § 8.01-251 twenty-year statute of limitations likewise does not apply.

While I agree with the majority that our holding in <u>Bennett</u> contains the principles that govern resolution of this case, in my view, those precepts do not necessarily dictate the result reached by the majority. Because there is a significant fundamental difference as to the ongoing unliquidated support order in <u>Bennett</u> and a child support obligation that terminated and became fixed by operation of law,[9] that difference allows for and dictates a different result, in my opinion. Where I differ from the majority is the legal impact that the youngest child's emancipation, or any other support obligation that is terminated and becomes fixed by operation of law, had on appellant's child support obligation. Also, I disagree that no principled reason exists to treat a fixed child support obligation different from an ongoing, unliquidated spousal

---

[9] Notably, and in contrast to the facts in <u>Bennett</u>, a spousal support obligation becomes fixed and ascertainable as a sum certain when either the obligee spouse remarries or either spouse dies, Code § 20-109, and, in my view, the statutory bar of Code § 8.01-251 would prohibit any action to recover those past due amounts after twenty years from the date that the sum certain became fixed and ascertainable.

support obligation. In my view, the youngest child having attained the age of majority converted the arrearages, by operation of law, from an "unliquidated, ongoing child support order" to a fixed and ascertainable sum certain. Thus, because that sum certain was due, payable, ascertainable, and not modifiable as of June 24, 1982, I would hold the twenty-year limitation of Code § 8.01-251(A) bars DCSE's claim to recover the past due child support obligations and accumulated interest on behalf of the 42-year-old youngest child. Accordingly, I respectfully dissent.[10]

Initially, I acknowledge that child support "payments are fixed according to the needs of the child or children," Fearon v. Fearon, 207 Va. 927, 931, 154 S.E.2d 165, 167 (1967), and that "[t]o bar the child because of a parent's failure to timely assert the child's claim for support . . . [would be] to deprive the child of that support which belongs to him for reasons over which the child has no control." Wilson v. Wilson, 464 So. 2d 496, 499 (Miss. 1985). However, "[s]tatutes of limitations are designed to insure fairness to defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 473 (1975) (Marshall, J., dissenting); see Carter v. Carter, 232 Va. 166, 172, 349 S.E.2d 95, 98 (1986) ("Protection of defendants against stale claims is recognized and accepted as a legitimate legislative concern.").

> Statutes of limitation "serve an important and salutary purpose." Burns v. Stafford County, 227 Va. 354, 359, 315 S.E.2d 856, 859 (1984). Indeed, without limitations on actions, defendants could find themselves at the mercy of unscrupulous plaintiffs who hoard evidence that supports their position while

---

[10] I agree with the majority that under Bennett, of which I was a panel member, "our analysis of the distinction between an ongoing, unliquidated support order and a liquidated money judgment under Virginia law transcends a URESA proceeding." Further, the majority correctly holds it is inconsequential for the present determination that the facts in Bennett involved another state's law where support payments do not vest immediately upon becoming due.

- 12 -

> waiting for their prospective opponents to discard evidence that would help make a defense. In light of the policy that surrounds statutes of limitations, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case. Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations. Id. Thus, courts are obligated to enforce statutes of limitation strictly and to construe any exception thereto narrowly.

Westminster Investing Corp. v. Lamps Unlimited, 237 Va. 543, 547, 379 S.E.2d 316, 318 (1989).

Different jurisdictions have juxtaposed these competing principles in various ways where child support is at issue to accommodate the needs of the child as well as the fairness to the obligor parent. Some states allow "the statute of limitations . . . to run as against each installment that becomes due," others "provide that such a limitations period does not begin to run until the child becomes of age and the duty to support has come to an end," or, "where there has been a judgment for arrearages, when the judgment was entered." 24A Am. Jur. 2d Divorce and Separation § 980 (2008) (citing cases). Still others have held "proceedings to enforce alimony and child support orders are equitable proceedings that are not barred by the statute of limitations." Brumby v. Brumby, 647 So. 2d 330, 331 (Fla. Dist. Ct. App. 1994). Here, the majority holds based upon Bennett, that as to the spousal support obligation the twenty-year statute of limitations period begins to run only upon the entry of a liquidated money judgment establishing the arrearages. While Bennett provides significant instruction as to how Virginia courts are to treat support obligations in light of Code § 8.01-251, I believe that different factors come into play with the support obligation *in this case* and the Bennett decision does not preclude the statute of limitations period from beginning to run upon the emancipation of the

child as well as when a money judgment for arrearages is entered either as to spousal or child support. [11]

The primary issue in Bennett was whether to apply the statute of limitations to a spousal support order whose final obligation remained uncertain so long as ongoing future periodic payments will continue to accrue. Under the facts presented to the Bennett panel, a spousal support order could take on two forms: (1) an "ongoing, unliquidated spousal support obligation [or (2)] one that adjudicates a sum certain or liquidated amount due and owing." Bennett, 15 Va. App. at 140, 422 S.E.2d at 461. Bennett, dealing with spousal support rather than child support, had no reason to contemplate or address a third scenario, which we have in the instant case, where a child support decree ceases to be "ongoing" by operation of law.[12] When considering a child support order, a "'parent has the legal obligation to support his [or her] children *only during their minority.*'" Goldin v. Goldin, 34 Va. App. 95, 103, 538 S.E.2d 326, 330 (2000) (quoting Cutshaw v. Cutshaw, 220 Va. 638, 641, 261 S.E.2d 52, 54 (1979))

---

[11] We need not address the propriety of the other options, as we have rejected creating a new statute of limitations period for each individual support payment as it vests and becomes due. Bennett, 15 Va. App. at 144, 422 S.E.2d at 463 ("Because of the ongoing nature of a spousal support order, no time limitation is placed upon the obligee spouse within which to obtain a judgment for accumulated arrearages."). On the other hand, we have recognized situations where the statute of limitations applies to support payments. See Carter, 232 Va. at 173, 349 S.E.2d at 99 (applying the ten-year statute of limitations period to a lump sum foreign spousal support); Sheffield v. Sheffield, 207 Va. 288, 292, 148 S.E.2d 771, 774 (1966) ("The entry of judgment for accrued arrearages is generally recognized as a method of enforcing payment of the amount due."); Taylor v. Taylor, 14 Va. App. 642, 648, 418 S.E.2d 900, 903-04 (1992).

[12] It would have been inappropriate to do so in that case because the wife filed her URESA petition less than ten years after she remarried. Thus, the termination of the spousal support obligation by operation of law did not fall under the purview of the statute of limitations period. See Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) ("'[C]ourts are not constituted . . . to render advisory opinions . . . or to answer inquiries which are merely speculative.'" (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964))).

(emphasis added). Unless otherwise provided,[13] the jurisdiction of the divorce court to provide for a child's support and maintenance terminates once the child reaches the age of majority. Eaton v. Eaton, 215 Va. 824, 827, 213 S.E.2d 789, 792 (1975). Accordingly, a support obligation that terminates upon the emancipation of a child is no longer an "ongoing" obligation because the obligee parent does not continue to accrue payments due to him or her under the support order.

Once the support obligation ceases it is no longer "ongoing," but in order for the statute of limitations to begin to run the amount owed must also be "liquidated." The majority mistakenly reads Bennett, in my opinion, to say that a liquidated amount can only be rendered by a judgment for arrearages calculated and rendered by the court. We explicitly held in Bennett that "Code § 8.01-252 [now Code § 8.01-251] embraces an order for a sum certain *or* liquidated amount for spousal [or child] support." 15 Va. App. at 142, 422 S.E.2d at 462 (emphasis added). In addition to a judgment for the arrearage, which may be entered periodically as arrearages accrue, a "sum certain" of support due and owing also falls under the mandate of Code § 8.01-251 and the twenty-year limitation period. An ongoing support order cannot be "liquidated" because future payments are still owed, and the possibility exists that a court may modify the amount of future payments. See Cofer v. Cofer, 205 Va. 834, 140 S.E.2d 663 (1965) (permitting the trial court to modify future support payments). Thus, so long as the obligor parent continues to owe periodic support payments, the total amount due "cannot be determined by a fixed formula" even though the court may determine and enter a judgment for arrearages due at the time. Black's Law Dictionary 419 (8th ed. 2004) (defining "unliquidated damages").

---

[13] See Code § 20-124.2 (extending a child support obligation for a disabled child or until the child finishes high school).

However, once the child attains the age of majority, the "[t]ime and circumstances of the parties [have] determine[d] ultimately the total amount to be paid under [the] . . . support order." Bennett, 15 Va. App. at 141, 422 S.E.2d at 462. The support obligation is then a "sum certain" since the entire final amount of the obligation can be "readily computed, based on an agreement's terms [or the support award]." Black's Law Dictionary, supra, at 949. It is well settled that "[n]o support order may be retroactively modified." Code § 20-108; see Riggins v. O'Brien, 263 Va. 444, 447, 559 S.E.2d 673, 675 (2002). Furthermore, payments due under a support order vest once they become due and cannot be modified. Once the child reaches the age of majority, the obligor parent owes no further payments under the support order and the amount owed is a sum certain due and payable. Accordingly, I believe that because the support obligation became a "sum certain" when the child was emancipated, the Bennett rationale for not applying the statute of limitations to an ongoing unliquidated support order was obviated. I thus would hold the statute of limitations "'would not begin to run until such time as the [arrearage] was reduced to a lump sum payment or *until emancipation of the child, whichever was the former*.'" Harvey v. McGuire, 635 S.W.2d 8, 9 (Ky. Ct. App. 1982) (quoting Schmidt v. Forehan, 549 S.W.2d 320, 323 (Ky. Ct. App. 1977)) (emphasis added).

In summary, I believe the majority's characterization of appellant's obligation under the 1966 child support order as "an unliquidated, ongoing child support order" is inaccurate since the amount was a sum certain by operation of law when the child became emancipated. Appellant's support obligation was not "ongoing" because, as the majority concedes, appellant was no longer required under the 1966 decree to pay child support as of June 24, 1982, when the youngest child attained the age of majority. Further, it cannot be said appellant's obligation is "unliquidated." Because appellant owed no more payments after June 24, 1982, and all previous payments were not subject to modification, appellant's obligation under the support order was a sum certain or

became a liquidated amount -- that is "a figure readily computed, based on an agreement's terms [or the court's award]." Black's Law Dictionary, supra, at 949. Accordingly, in my view, the statute of limitations should have begun to run on June 24, 1982. DCSE did not file its petition to enforce the 1966 child support order until July 7, 2008. Therefore, I would hold that the twenty-year limitation under Code § 8.01-251 barred recovery of all arrearages as of June 24, 1982.

Finally, I observe that by allowing the statute of limitations to begin to run upon the emancipation of the minor child would not, in a very significant respect, treat child support payments differently from spousal support payments. Indeed, unless otherwise indicated in the support order, both child and spousal support automatically cease by operation of law upon the occurrence of certain events. Pursuant to Code § 20-109, a spousal support obligation "shall terminate upon the death of either party or remarriage of the spouse receiving support," and similarly child support ceases upon the child reaching the age of majority except when the child is disabled or until he or she finishes high school. In my view, our holding in Bennett would not permit a spouse who has remarried to collect spousal support arrearages more than twenty years after having remarried.[14]

For these reasons, I respectfully dissent from the majority's affirmance of the trial court's ruling.

---

[14] As I understand the majority's construction and application of the Bennett holding, had she not sought a judgment for arrearages and had remarried, she could nevertheless seek to enforce the support obligation and collect the arrearage even after twenty years from having remarried. I do not understand Bennett to extend that far.