COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Senior Judge Annunziata
Argued at Alexandria, Virginia

NATIONAL EXPRESS CORPORATION,
 OLD REPUBLIC INSURANCE COMPANY AND
 SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.

MEMORANDUM OPINION[*] BY
v.     Record No. 1270-16-4          JUDGE ROSSIE D. ALSTON, JR.
                                      MARCH 7, 2017

MARY PRITCHETT

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Ian A. Spreat (Joshua M. Wulf; Midkiff, Muncie & Ross, P.C., on
brief), for appellants.

Kathleen Grace Walsh (Law Office of Kathleen Grace Walsh, on
brief), for appellee.

National Express Corporation, Old Republic Insurance Company, and Sedgwick Claims

Management Services, Inc. (hereinafter collectively referred to as appellants), appeal the

decision of the Commission finding that Mary Pritchett (appellee) was entitled to continued

temporary partial disability benefits because her "efforts [to find work] were reasonable and in

good faith." Appellants argue that the Commission erred in finding that appellee reasonably

marketed her residual working capacity, and thus, erred in affirming appellee's award for

temporary partial disability benefits beginning on December 15, 2015. We disagree and affirm

the decision of the Commission.

BACKGROUND

On February 7, 2015, appellee injured her right hand and right knee while at work, after

tripping over a wheelchair lift on a bus that did not lower completely. Thereafter, on February 9,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

2015, appellee went to the emergency room where she was given the following restrictions: (1) no driving the company vehicle, (2) no push pull over zero pounds and must wear brace, and (3) alternate sitting and standing. Appellee was diagnosed with bilateral knee contusions, bilateral hand lacerations, right thumb sprain, and right wrist sprain.

On July 23, 2015, the Commission approved appellee's agreement form for payment of compensation, and an award was entered in favor of appellee against appellants for $615.33 per week during temporary total disability beginning on February 8, 2015. On August 10, 2015, National Express Corporation sent appellee a letter regarding her modified work assignment to include: answering phones, handing out/receiving drivers' paperwork, assisting with bus pull out and in, and any other duties that do not conflict with appellee's work restrictions. The letter indicated that appellee's rate of pay per hour would be $16.77. Prior to the injury appellee was earning $771.13 per week with her primary job at Arlington City Schools and $151.86 per week at her concurrent job with National Express Corporation. Appellee refused the modified work assignment on August 14, 2015. In response, National Express Corporation filed an application for a hearing, in which it requested termination and suspension of appellee's current award.

On January 8, 2016, appellee's status was updated to "light work," with restrictions including: lifting twenty pounds maximum and frequent lifting or carrying objects up to ten pounds. Specifically, though, appellee's doctor indicated "no lifting on right" and "no driving [at] work," and checked boxes that appellee (at the time) may never lift, climb ladders, or crawl. The doctor indicated that appellee could occasionally perform simple grasping, fine manipulation, and keyboarding.

On January 14, 2016, a deputy commissioner heard National Express Corporation's application for termination and suspension of the outstanding award. During the hearing appellee testified that she had been in search of light-duty work since November 2015, and

entered into evidence her job search journal and several job applications. During her search, she registered with the Virginia Employment Commission (VEC), she went to the mall in search of jobs, and posted on job websites. Appellee stated that she is right-hand dominant and indicated that she had been looking for customer service and receptionist positions where she would not have to use her dominant hand. In stating that she applied to as many jobs as she could find that were within her limits, she also applied for service positions, cashier positions, and help desk positions.

On cross-examination, appellee stated that prior to her accident she worked between three and twenty-two hours per week for National Express Corporation and between thirty and forty hours per week for Arlington City Schools. However, at the time of the hearing, and since December 8, 2015, appellee was only working nine hours per week with National Express Corporation. Appellee stated that she would not have applied for a position requiring her to type forty words per minute because she could not do so.

The deputy commissioner issued an opinion on February 3, 2016 "suspending and reinstating" payments of compensation between the period of October 1, 2015 and December 7, 2015. However, the deputy commissioner found that starting on December 8, 2015, appellee "reasonably marketed her residual wage earning capacity . . . , and [was] therefore entitled to a continuing award of temporary partial disability compensation commencing [December 8, 2015]." In making his ruling, the deputy commissioner indicated that he found appellee to be a "candid and credible witness." He stated that she began documenting her job search on December 15, 2015 and identified about thirty-two prospective employers that she contacted prior to January 14, 2016. Further, the deputy commissioner found that appellee had "significant restrictions" and credited appellee's "testimony that she looked for work within her educational background and her physical restrictions and that she was physically capable of performing the

jobs for which she applied."  Additionally, the deputy commissioner awarded appellee a supplemental award.

On March 1, 2016, appellants requested a review of the deputy commissioner's decision. All parties submitted written statements.  On July 5, 2016, the Commission affirmed the deputy commissioner's findings.  In so doing, Commissioner Williams stated:

> The Komorny [v. Valley Boiler, Inc., VWC No. 239-26-78, 2009 VA Wrk. Comp. LEXIS 1002 (VA Wrk. Comp. Dec. 7, 2009),] situation is not similar to the case before us.  Here, [appellee**,** a high school graduate who worked as a bus driver for 33 years, did not seek employment in the bus driving field, the field in which she has the most experience but cannot perform within her restrictions.  Instead, she reasonably attempted to find work in various areas of customer service, which might allow her to work within her significant work restrictions.  [Appellee] registered with the [VEC], and with assistance at the VEC, she searched internet sites for employment.  [Appellee] testified that she applied to all the jobs that she found appropriate for her work restrictions.  Her marketing log, which was admitted as [appellee's] Exhibit 2, supports her testimony.  Given [appellee's] significant work restrictions, her work experience, her education and the nature and extent of her job search, we find [appellee's] efforts were reasonable and in good faith.  Accordingly, she is entitled to continuing temporary partial disability benefits beginning December 15, 2015.

(Footnote omitted).  This appeal followed.

## ANALYSIS

The Commission's awards as to questions of fact are conclusive and binding "to the extent that they are 'predicated upon evidence introduced or appearing in the proceedings.'" Ford Motor Co. v. Favinger, 275 Va. 83, 88, 654 S.E.2d 575, 578 (2008) (quoting Uninsured Emp'rs Fund v. Gabriel, 272 Va. 659, 664, 636 S.E.2d 408, 411 (2006)).  "The determination as to whether an employee seeking temporary partial disability benefits has made a reasonable effort to market his residual work capacity falls within the Commission's fact-finding, and if the Commission's factual conclusion on that question is supported by credible evidence, it will not

- 4 -

be disturbed on appeal." Id. (citing Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000)). On appeal, this Court must "view the evidence in the light most favorable to the party prevailing below" and grant that party all reasonable inferences. Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477, 624 S.E.2d 681, 683 (2006) (quoting Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003)).

"In a claim for temporary partial disability, the employee '[has] the burden of proving that he [has] made a reasonable effort to procure suitable work but [is] unable to market his remaining work capacity.'" Ford Motor Co., 275 Va. at 89, 654 S.E.2d at 578 (quoting Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985)). This Court has previously declined to fix guidelines as to what constitutes a "reasonable effort." See Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). In doing so, we reasoned that many factors were involved in such a determination and that "[w]hat is reasonable in one area, or in one industry, or even in one season might not be reasonable in another. The employee must obviously exercise reasonable diligence in seeking employment, and what is reasonable in a given case will depend upon all of the facts and surrounding circumstances." Id.

In Bateman, we noted that the physical condition and the limitations that the physician places on the employee are critical factors in the determination as to what is reasonable. Id. However, we did indicate that it would be unreasonable for a claimant to place "undue limitations on the kind of work he [was willing to] accept, including limitations not justified by the character of his impairment." Id. (citation omitted). Ultimately, in Bateman, this Court held that the decision of the Commission was not supported by credible evidence because there was no proof that claimant applied for any more than four or five positions over a six-month period when a number of other suitable jobs were available. Id. at 467-68, 359 S.E.2d at 103. Rather

- 5 -

than apply for these positions, claimant instead applied for jobs which he was not qualified for in terms of his education, experience, and the limitations placed on him by his treating physician. Id. at 468, 359 S.E.2d at 103.

While the determination as to what is a reasonable effort is evaluated on a case-by-case basis, id. at 467, 359 S.E.2d at 102, the Supreme Court of Virginia has provided certain criteria to *consider* in making this determination:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Ford Motor Co., 275 Va. at 90, 654 S.E.2d at 579 (citing Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted)).

Using these criteria, appellants rely on Vasques-Pineda v. Fuentez Diaz Contractors, Inc., VWC No. 229-15-96, 2008 VA Wrk. Comp. LEXIS 1234 (VA Wrk. Comp. Oct. 22, 2008),[1] Lewandowsky v. Genco Masonry, Inc., JCN VA00000082016, 2011 VA Wrk. Comp. LEXIS 985 (VA Wrk. Comp. Aug. 1, 2011),[2] and Komorny v. Valley Boiler, Inc.,VWC No. 239-26-78, 2009 VA Wrk. Comp. LEXIS 1002 (VA Wrk. Comp. Dec. 7, 2009), to argue that appellee did not meet her burden of proving that she made reasonable efforts to market herself in her job

---

[1] In Vasques-Pineda, the Commission found that "claimant did not act in good faith in seeking suitable employment" because he only visited the VEC once, received leads that were unsuitable for his disability, background, and experience, and only reached out to four other prospective employers without information as to position openings. 2008 VA Wrk. Comp. LEXIS 1234, at *8.

[2] In Lewandowsky, the Commission found claimant's marketing efforts insufficient because he only registered with the VEC, but did not use its database, did not inquire about areas of employment other than bricklayer positions even after receiving medical advice that he was unable to perform such tasks, and ultimately, the Commission reasoned that while he called one employer per day, he only spoke with whoever first answered the telephone. 2011 VA Wrk. Comp. LEXIS 985, at *9-10.

search. However, we disagree that these cases are analogous to the instant case, but find Komorny most instructive in distinguishing this case.

In Komorny, the Commission found claimant's efforts to market himself insufficient because he only sought employment which he was physically unable to perform. 2009 VA Wrk. Comp. LEXIS 1002, at *8. There, claimant was a pipe fitter, with the majority of his work experience in plumbing and pipe fitting. Id. at *2. After injuring his dominant left arm, claimant had permanent work restrictions due to his inability to perform his pre-injury job functions. Id. at *2-3. Claimant began marketing his residual working capacity by registering with the VEC, where he completed applications online, and by applying for job postings in the phone book and online. Id. at *3. On average, claimant applied for two jobs per week but did not follow up on any of the positions. Id. Further, claimant only applied for plumbing, maintenance, realty, and pipe-fitting positions, *knowing* that these jobs were within his restrictions. Id. at *3-4.

Here, the Commission did not find Komorny similar to this case. We agree with the Commission. Between December 4, 2015 and January 8, 2016, appellee's doctor noted that she should refrain from lifting with her right hand and any occupational driving, but that she could perform light work with some restrictions while wearing a brace. On January 8, 2016, appellee's doctor further indicated that appellee could perform occasional simple grasping, fine manipulation, and keyboarding. With these restrictions in mind, appellee applied for service positions, cashier positions, receptionist jobs, and help desk positions. Appellee searched the internet for positions and registered with the VEC. From the evidence, it appears, that she visited the VEC office at least once per week to get help screening for appropriate jobs. Throughout her search, appellee applied for over thirty jobs.

Appellants focus on appellee's candid admission that she would "try" to perform these jobs in an attempt to prove that she would be unable to do so. However, this fact is not part of

any test that this Court must employ, nor the sole fact that this Court is faced with in its consideration. The deputy commissioner, who was in the best position to gauge appellee's credibility, found appellee to be truthful and candid. As such, there is no evidence that appellee applied for jobs that she did not believe she would be able to perform. In fact, appellee testified that she "would [not] apply [for a position requiring her to perform tasks, such as typing forty words per minute], because [she could not] do it."

Further, appellants focus on the dearth of information in the record as to the job requirements for the positions that appellee applied. However, on appeal, we review this case viewing the evidence in favor of the prevailing party, granting that party all reasonable inferences therefrom. See Stillwell, 47 Va. App. at 477, 624 S.E.2d at 683 (quoting Clinchfield Coal Co., 40 Va. App. at 72, 577 S.E.2d at 539). Given this deferential standard, we find nothing to conclude that appellee applied for jobs that she would be unable to perform.

In evaluating this matter under the applicable standard of review, and considering appellee's work restrictions, her thirty years of experience as a bus driver, her age, her education, the nature and extent of her job search, the evidence of the many jobs that appellee applied for given her known restrictions, and the findings of the Commission, we find that the Commission's decision is supported by credible evidence in the record. Thus, we will not disturb the Commission's finding that appellee reasonably marketed her residual working capacity.

Affirmed.